CARRIE P. WEILBACHER.

*vs.*

THE J. W. PUTTS COMPANY, a Corporation.

*Streets and highways: pedestrians' rights; obligations of abut-
ting property owners. Nuisances: injuries to persons passing;
independent contractors; swinging scaffolds for
painters. Res ipsa loquitur. Evidence: cross-
examination; where defendant was
called by plaintiff.*

Where the owner has a building painted by an independent
contractor, over whose work, etc., the owner has no control, the
failure of the contractor properly to secure the swinging plat-
form on which the painting is done, in consequence of which
one of the painters falls, and in so doing injures a person
walking on the sidewalk, the negligence is not attributable
to the owner of the property, unless such injury resulted from
the disregard or negligence of some duty for which the owner
of the property was responsible.                     pp. 264-265

The free and unobstructed use of the public street is a right
that belongs to the public, and it is the duty of those owning
and occupying property abutting on highways so to use their
property and keep it in repair, as not to endanger the public
while in the use of any of its rights.                  p. 255

If an abutting owner causes a nuisance to be erected on his
property, and an injury to a person using the street follows as a
result of the existence of the nuisance, the owner is not absolved
from liability because of the fact that he employed an inde-
pendent contractor to do the work.                    p. 255

But such owner is not liable for the negligence of the employees of the contractor in a matter collateral to the contract.
p. 255.

The suspension on a building of a stage or scaffold, above the sidewalk, for the purpose of painting the building is not such a menace to the safety of persons using the streets as to amount to a nuisance; and injury to a passerby by the falling of the painters from the scaffold or the fall of any object used by them is not one to be anticipated by the owners of the building as a probable consequence of having the building painted in any manner. p. 257

The testimony of a painter who has been engaged for a great number of years in painting buildings, that in all that time he had not seen a man fall from a swinging scaffold is admissible as evidence to show that swinging or suspended stages or scaffolds, for the painting of buildings, do not of themselves constitute nuisances. p. 258.

The owner of property abutting on a highway is not required to provide against all possible injury, and it is only such injury as may be reasonably anticipated that he is bound to take precautions to prevent. p. 261

The owner of property abutting on public highways are not insurers to the public against injury, and they are not bound to provide against all possible injury, however remote. p. 264.

In general the question whether an injury received by a user of a public highway from work being done on abutting property was one that might have been reasonably anticipated by the owner of the property as a probable consequence of work contracted to be done, is one of fact for the jury. p. 265

In general, for the maxim *res ipsa loquitur* to apply there must be some reasonable evidence of negligence. p. 266.

But, where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the

management, use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.                              p. 266

Where a witness, the president of a defendant corporation, is called by the plaintiff, on cross-examination, he may be given an opportunity to explain the connection of the defendant company with the matter.                              pp. 266-267

In general a re-direct examination must relate only to matters referred to on cross-examination.                              p. 267

*Decided April 8th, 1914.*

Appeal from the Baltimore City Court.  (HARLAN, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*R. Lee Slingluff* and *Thomas Foley Hisky,* for the appellant.

*Clarence A. Tucker* (with whom was *Samuel J. Harman, Charles H. Knapp* and *Joseph N. Ulman* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

This suit was brought to recover for injuries alleged to have been caused by the negligence of the J. W. Putts Company, a corporation, the defendant below and appellee in this Court, and as the case was withdrawn from the jury at the close of the plaintiff's testimony on the ground that there was no "evidence in the case legally sufficient to entitle the

plaintiff to recover under the pleadings," it will be necessary to refer to the pleadings and evidence.

The declaration contained three counts, each one of which was demurred to. The Court below overruled the demurrers to the first and third counts and sustained the demurrer to the second count. The second count was amended, and the case was tried on the issues joined on the first, third and amended second counts with the result stated.

The first count alleges that the defendant was, on the 25th of September, 1911, the owner and in possession of the store and premises on the northwest corner of Park avenue and Lexington street, two of the public streets of Baltimore City, and, for the purpose of repairing and painting the building, caused "a large ladder or scaffold to be suspended from the roof of said building, over and above the sidewalk along said building on Park avenue, in a negligent and unskillful manner in that the defendant, its servants and agents, neglected to make said scaffold fast by proper guy lines," and that, as a result of such neglect, the ladder or scaffold slipped and one of the defendant's servants, who was working on the ladder, was precipitated to the sidewalk, and, in falling, struck the plaintiff, who was passing along the sidewalk, and seriously and permanently injured her.

The amended second count charges that the injury to the plaintiff was caused by the negligence of the defendant, "its agents and servants, in erecting, using and operating said ladder or scaffold in that the defendant, its agents and servants in charge thereof negligently failed and omitted to properly fasten said ladder or scaffold with guy lines," by reason of which negligence the defendant's servant "slipped and fell from said ladder" to the sidewalk and struck the plaintiff.

The third count avers that the defendant caused the ladder or scaffold to be suspended from the roof of the building over and above the sidewalk for the purpose of painting the building; that the erection and use of the ladder or scaffold

"endangered the travel" on the sidewalk and that it became the duty of the defendant to "guard said work" and sidewalk for the protection and safety of persons using the sidewalk, which the defendant failed to do, and that by reason of said failure on the part of the defendant the plaintiff, while passing along the sidewalk, "was struck by the defendant's servant in falling from said ladder" and seriously injured.

It appears from the evidence in the case that the appellee owned and was conducting a store in the building on the northwest corner of Park avenue and Lexington street, two of the public streets of Baltimore City, and in August, 1911, contracted with Crooks, Zick & Co. for the painting of the outside or exterior wood and metal work of the building. Crooks, Zick & Co. submitted, in writing, a bid for the work, on the 24th of August, and the bid was accepted by the defendant verbally. The building was six stories high, and the painting was done in the usual way from a "stage" or scaffold about twenty-four by thirty feet long (which resembles a ladder in a horizontal position with boards on it), suspended on the outside of the building above the sidewalk by ropes fastened to each end of the stage and attached to L-shaped hooks, which were hooked to the cornice of the building and kept in place by guy lines extending over the roof and tied to a chimney. On the day of the accident, Zick, a member of the firm of Crooks, Zick & Co., the contractors, and two employees of the firm were engaged in doing the painting. After working in the morning they changed the position of the stage, so that at the time of the accident the stage was at the top of the fourth floor of the building, just outside of and about on a level with the cornice of a bay window which extended beyond the building line and over the sidewalk. Zick and one of the employees of the firm were on the stage, and Zick was kneeling with one knee on the stage and the other knee on the top of the bay window, when the rope slipped, one end of the stage was slightly lowered, and Zick lost his balance and fell to the sidewalk. The

man on the stage with Zick did not fall nor did anything fall from the stage, and the other employee of Crooks, Zick & Co., who was painting from the cornice above, testified that the lowering of one end of the stage, which caused Zick to lose his balance, was due to the fact that the guy rope was "not tied tight enough," that is, it was not taut, and that as soon as it was "stretched tight enough" the stage stopped; that shortly before the accident he was on the roof of the building and noticed that the guy line was not "tied tight enough," and that when he went down he told Mr. Zick so. In falling from the stage Zick struck the plaintiff's foot as she was walking along the sidewalk and seriously injured her. The evidence further shows that the stage extended beyond the building line and over the sidewalk; that the defendant knew of the position of the stage and did not erect any barrier on the street or "rope the street off" to prevent persons walking on the pavement under the stage; that defendant did not employ the men engaged in painting the building, had nothing to do with the methods used in the performance of the work, did not exercise any control "over the appliances, methods or men used or engaged in the work," and that the appliances belonged to Crooks, Zick & Co.

As we have said, the case was withdrawn from the jury at the close of the testimony offered by the plaintiff, so that in reviewing that ruling we are dealing with the case as presented by the pleadings and the plaintiff's evidence.

The first and amended second counts of the declaration declare that the injury complained of was caused by the negligence of the *defendant's* servants in failing to make the stage or scaffold fast by "proper guy lines," and in neglecting to "properly fasten" the scaffold "with guy lines." The evidence shows that the accident was, as alleged, due to the fact that the guy lines were not properly fastened or, as the witness expressed it, were not "tied tight enough," but it also shows that the work was not done by the defendant but by Crooks, Zick & Co., who contracted to do it and furnish

the appliances and employed the labor for that purpose, and that the defendant did not have supervision of the work or any control over the men engaged in it. The negligence of which the plaintiff complains in the first two counts was not, therefore, the negligence of the defendant or its servants, but the negligence of the servants of an independent contractor, for which the defendant is not liable, unless the injury to the plaintiff resulted from its disregard or neglect of some duty that it owed to her and other persons using the sidewalk on which she was injured. *Deford* v. *State, use of Keyser,* 30 Md. 179; *City & S. Ry. Co.* v. *Moores,* 80 Md. 348; *Smith v. Benick,* 87 Md. 610; *Decola* v. *Cowan,* 102 Md. 551; *P., B. & W. R. R. Co.* v. *Mitchell,* 107 Md. 600.

The free and unobstructed use of the public streets is a right that belongs to the public, and it is the duty of those owning and occupying property abutting on a highway to so use their property and keep it in repair as not to endanger the public while in the exercise of that right. If, therefore, an abutting owner causes a nuisance to be erected on his property and injury to a person using the street follows as the result of the *existence* of the nuisance, the owner is not absolved from liability because of the fact that he employed an independent contractor to do the work. In other words, if the injury be caused by the thing contracted to be done, the owner is responsible, but he is not liable for the negligence of the employees of the contractor in a matter collateral to the contract. Again, the person for whom work is done will be liable when the injury is such as might have been anticipated by him, as the probable consequence of the work, and he failed to take the proper precaution to prevent it, or where it results from his neglect to discharge a duty that he owes to third persons or the public in the execution of the work.

In *Deford's Case,* according to the evidence offered by the plaintiff, the wall on the defendant's property, fronting on a public street, was erected in such a defective and dangerous

manner that it constituted a nuisance, and JUDGE ALVEY said: "If this be so, it (the wall) constituted a nuisance, for which the defendant would be liable. And the fact that the wall was erected by others, under contract, and to whom he did not bear the relation of master, will not excuse him; for, as was said by LORD CAMPBELL in *Ellis* v. *Gas Consumers' Co.,* 2 E. & B. 767, it is a proposition absolutely untenable that in no case can a man be responsible for the act of a person with whom he has made a contract. If the contractor does the thing which he is employed to do, the employer is responsible for that thing as if he did it himself." JUDGE ALVEY then adopts the statement of BARON WILDE in *Hole* v. *R. R. Co.,* 6 Hurl. & Nor. 488: "The distinction appears to me to be that, when work is being done under a contract, if an accident happens, and an injury is caused by negligence in a matter entirely collateral to a contarct, the liability turns on the question whether the relation of master and servant exists." In *City & S. Ry. Co.* v. *Moores, supra,* the the Court speaking through JUDGE BOYD, said: "Even if the relation of principal and agent, or master and servant, do not, strictly speaking, exist, yet the person for whom the work was done may still be liable if the injury is such as might have been anticipated by him, as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work." In *Mitchell's Case* the late JUDGE SCHMUCKER, after referring to *Deford's Case* and others, said: "As a result of these cases it may now be said to be settled in this State that although, when the work is being done by an independent contractor, the employer will not be liable for an injury caused by negligence in a matter collateral to a contract, he will be liable if the injury be caused by the thing contracted to be done, or if it be such as might have been anticipated, as a probable consequence of the work let out to the contractor, and he took no precaution to prevent it."

And in the case of *Baltimore* v. *O'Donnell,* 53 Md. 110, where the appellee was injured by reason of the fact that there was no light nor signal to warn persons of the dangerous condition of the street, the Court held that the primary obligation was upon the city to keep the street in a safe condition, and that it could not commit that duty to a contractor so as to avoid liability for injury resulting from a failure to maintain a proper warning of danger.

Now applying these well-established rules to the facts of this case, it is apparent that the plaintiff, much as her painful and serious injury is to be regretted, is not entitled to recover from the defendant unless we are to hold that the suspension of the stage or scaffold above the sidewalk was such a menace to the safety of those using the street as to amount to a nuisance, or that the injury was one that might have been anticipated by the defendant, as a probable consequence of having its building painted from a suspended stage or scaffold.

The evidence shows that the work was done in the usual way in which buildings located on public streets are painted; that the stage or scaffold was a good one, and that the accident was due entirely to the negligence of the servant of Crooks, Zick & Co. in not tieing the guy line tight enough. There was no evidence to show that it was a common occurrence for painter to fall from a suspended stage, or that it was customary to erect guards or covers over sidewalks above which men are engaged in painting a building from a suspended stage, or to "rope" the street so as to prevent persons from using the sidewalk during the progress of the work. On the contrary, the only evidence reflecting upon this feature of the case was the testimony of the witness, Israel, who was engaged in painting the building at the time of the accident, and who testified that he had had forty-three years' experience in such work and that he had never seen a man fall from a painter's stage, and had never seen a stage fall to the sidewalk; that it was not necessary as a general thing

to erect barriers to prevent people from walking under the stage, and that after the accident he went back to work and used the same stage and same guy lines, and the testimony of James L. Thomas, who stated that he was a member of a firm engaged in house painting and decorating, and that the firm employed from twenty-five to sixty-five men; that he had been engaged in the business for thirty-three years, and that he had seen one man fall from a scaffold but had never seen a painter fall from a swinging scaffold. This evidence not only tends to show that the suspended stage was not a nuisance, but also shows that there was no reason why the defendant should have anticipated or provided against injury to persons using the sidewalk.

In *Deford's Case* the plaintiff was injured by the falling of the wall of a house which was in course of erection by an independent contractor for Deford. There was no suggestion in that case that the erection of a building fronting on the sidewalk of a public street was a nuisance, but Deford's liability was based by the Court upon the evidence that the particular wall in question was constructed in such a *dangerous* and *defective manner* that it became and was a nuisance. And in *Decola's Case* the plaintiff was injured by a brick that fell from a house which Cowan, the contractor, was erecting for and on the property of the North Baltimore Construction Company. The suit was abandoned as to the owner of the property, and this Court said that there was no evidence in the case to make the company liable for the injury. The Court could not have decided as it did in those cases if the erection of a house fronting on the sidewalk of a public street is a nuisance, yet it is a matter of common knowledge that the erection of such buildings is attended with *some risk,* and that appliances extending over and above the sidewalk are employed in the execution of the work. In the case of *Boomer* v. *Wilbur et al.,* 176 Mass. 482, 57 N. E. 1004, the owner of a house employed a contractor to repair a chimney, and the plaintiff was injured by the falling of a brick

during the performance of the contract. The Court there said: "The instructions to the jury allowed them to find a verdict for the plaintiff * * * upon the ground that the work of repair called for by the contract was necessarily a nuisance, within the rule stated in *Woodman* v. *Railroad Company, ubi supra,* and other similar cases. The work called for was the repair of chimneys. At most, the brick were to be taken off for a few feet and relaid. The work which was to be done was not such as would necessarily endanger persons in the street. It did not involve throwing the brick into the street, or causing or allowing them to fall so as to endanger persons traveling therein. It is plain that, unless there was negligence in the actual handling of the brick, there could be no injury to the passing traveler. * * * This is not a case where the work, if properly done, creates a peril, unless guarded against as in the cases relied upon by the plaintiff. The accident was caused by the act of the contractor in doing what it was not necessary for him to do, what he was not expected to do, and what he did not intend to do. If it had been necessary for him to topple the chimney over into the street, or to remove the bricks by letting them fall into it, or the contract had contemplated such action, the instructions would not have been objectionable; but, as this was not necessary or intended, the work could not be classed as work which, if properly done, was ordinarily attended with danger to the public. The negligence, if any, was in the mere detail of the work. The contract did not contemplate such negligence, and the negligent party as the only one to be held." In the case of *Laffery* v. *Gypsum Co.,* 83 Kansas, 349, the Court, after referring to the general rule which exempts the employer from liability where the work is done by an independent contractor, and to the exception to that rule in cases where the work is intrinsically dangerous, however skillfully performed, said: "No effort will be made to define precisely the expressions 'intrinsically dangerous' or 'inherently dangerous,' or like phraseology, as used in the

authorities.   Regard must be had to the reason of the prin-
ciple and the consequences flowing from its application in the
given situation.   The mere liability to injury from doing the
work cannot be the test, for injuries may happen in any
undertaking, and many are attended with great danger if
carelessly managed, although with proper care they are not
specially hazardous."   After stating further that although
the erection of buildings in cities is attended with hazards,
such work has not been regarded as coming within the rule
applicable to work intrinsically dangerous, the Court quotes
with approval the statement of MR. CHIEF JUSTICE COCK-
BURN in *Bower* v. *Peate,* L. R. (1876), 1 Q. B. Div. 321,
that, "There is an obvious difference between committing
work to a contractor to be executed from which, if properly
done, no injurious consequences can arise, and handing over
to him work to be done from which mischievous consequences
will arise unless preventive measures are adopted."   In the
case of *Geist* v. *Rothschild,* 90 Ill. App. 324, the defendant
employed a contractor to paint the wall of his store.   The
painting was done from a scaffold suspended from the top
of the building, and the scaffold was lowered and raised by
ropes at the end of the scaffold.   The plaintiff was injured
by the falling of the ropes, the slack ends of which were coiled
on the scaffold and were in some way knocked off and struck
the plaintiff.   The Court there said that it was a daily occur-
rence in large cities like Chicago for the walls of buildings
on its streets to be painted, and that the fact that it was
necessary to suspend a scaffold over the street in order to do
it did not make it a nuisance if the scaffold was securely
suspended; that there was nothing inherently dangerous in
doing the work, provided it was done by competent persons
in the usual and ordinary way, and that there was no ques-
tion of fact for submission to the jury in that connection.   In
the case of *Sartirana* v. *N. Y. County Nat. Bank,* 124 N. Y.
S. 197, the plaintiff was struck by a platform which was
being lowered by means of a derrick on a building in course

of construction by an independent contractor. The Court held that the bank, the owner of the property, was not liable, and said: "The work being done here was no more intrinsically dangerous than the construction of a building along a public street usually is. \* \* \* The building was not of extraordinary height or at all out of the ordinary, so far as exterior construction was concerned, and unless the owner is in every case bound to guard against possible injuries to passersby, which is not the law, the bank could not be held liable for the negligence of a contractor." See also *Mehler* v. *Fisch,* 120 N. Y. S. 807.

Without meaning to go to the full extent of some of the authorities cited in the application of the rules announced, applying the principles there established to the facts of this case we cannot hold that the suspension of the stage or scaffold from the cornice of the defendant's building created a nuisance, or that the use of the stage in painting the building rendered the work so dangerous as to require the defendant to erect covers or guards over the sidewalk in order to protect persons walking thereon, or to erect barriers to prevent persons from using the sidewalk during the progress of the work. To do so would impose a useless burden upon property owners in cities, and subject the public to unnecessary inconvenience. Of course, there is *some* risk incident to the projection of any object over a highway, but the duty of the owner of abutting property does not require him to provide against all *possible* injury, and it is only such injury as may be reasonably anticipated that he is bound to take precautions to prevent.

The appellant relies largely upon *Mitchell's Case* and the cases of *Doll* v. *Ribetti,* 203 Fed. Rep. 593, and *McHarge* v. *Newcomer,* 9 L. R. A., N. S. 298. In *Mitchell's Case* the alleged injury was inflicted by a hammer which fell from a bridge being erected over one of the public streets of Havre de Grace and struck the plaintiff's umbrella as she was passing along the street under the bridge, and the Court said:

"There is evidence in the record tending to show that in the construction of such bridges, when the workmen are engaged in riveting the ties and braces between the girders composing the span they are compelled to work with great rapidity in order to put the rivets in place and clench them while at a white or red heat, and as a result rivets, tools and other articles handled with such rapidity frequently fall to the ground beneath and render it unsafe for travel unless properly guarded. There is like evidence that in the construction of the bridge now in question such objects did in fact frequently fall upon the street below it and that no precautions were taken to hinder the public from passing under the bridge or to prevent the falling of the objects from it." In the case of *McHarge* v. *Newcomer, supra,* the plaintiff while passing along the street was struck by a heavy awning roller which was "allowed by a party repairing the awning, in some way not shown, to suddenly fall upon her." The defendants offered no evidence explaining the falling of the roller, but introduced proof to show that the awning was being repaired by an independent contractor. The Supreme Court of Tennessee held that the awning was a nuisance, and held further "that the work contracted for involved a thing intrinsically dangerous to the public, from which injuries to those using the street were probable and might reasonably be anticipated by the proprietor," and in conclusion said: "The awning of the defendants, so far as it appears from this record, was being repaired by that contractor, over a much frequented street, in a populous city, and at a place where persons were constantly coming and going and standing, upon the invitation of the defendants, for the purpose of trading with them and taking the street cars, without any precautions taken to prevent portions of the awning, material or tools from falling on those below." In the case of *Doll* v. *Ribetti, supra,* the syllabus contains the following statement: "Where defendant, a tenant of a building erected flush with the sidewalk, permitted the servant of an independent contractor to stand

on the window ledges to clean windows on the outside without providing scaffolding or other safety appliances, and the servant fell and injured the plaintiff, who was walking past the building, whether the tenant was negligent in not providing scaffolds or safety appliances was for the jury." The statement of claim in that case charged, "That in the city of Pittsburgh, it had been a custom to have the windows of such buildings cleaned by persons standing on the outside of the sash or sills of the windows, secured from falling by a stout belt worn about the waist, with a strap on each side thereof, fastened to a hook or other fixture set for the purpose in the side frames or casing of each window." It further averred "that the building occupied by the defendant was not and never had been provided with such hooks, or with any other fit or appropriate fixtures for the purpose stated," and that the defendant, long prior to the day of the accident, "knew, or by the exercise of reasonable care should have known, that the windows of the building were not equipped with the customary hooks or other appropriate fixtures," etc., and that while the servant of the contractor was engaged in cleaning the window on the fourth floor of the building, he accidently lost his balance and fell upon the plaintiff, who was walking upon the sidewalk below. The Court said that the facts alleged in the statement of claim were for the most part undisputed, "and that there was evidence tending to support all of the allegations of fact upon which were based the charge of negligence of the defendant." In that case, therefore, the negligence of the defendant alleged and shown by the evidence was his failure to furnish the appliances and safeguards usually provided by the owner or occupier of ; building to prevent those engaged in washing the windows from falling.

The distinction between those cases and the case at bar is obvious. Here the evidence shows that the accident was due to the failure of the servants of Crooks, Zick & Co., to properly fasten or tie the guy lines. There is no evidence to

show that the defendant neglected to provide any safety appliance that was customarily supplied by the owner of the building, or that it was a common occurrence for painters to fall from a suspended stage or scaffold.

The appellant contends that the defendant owed an absolute duty to the public not to interfere "with their right to the safe and unimpeded use of the sidewalk." The duty that the owner of property on a highway owes to the public is not to create a nuisance on the highway, and to take proper precautions to prevent injuries that may be anticipated as a *probable* consequence of work in which he, or his contractor, is engaged. But that duty did not make the defendant an insurer against injury to the public, or require him to provide against all possible injury, however remote, nor did it require the defendant to go on the top of its building to see that the guy lines used by the contractor were properly tied. In *City & S. Ry. Co.* v. *Moores, supra,* the plaintiff was injured by reason of her horse becoming frightened at a steam engine which was being used by White, an independent contractor, in the execution of certain work on a turnpike. After referring to the rule stated in *O'Donnell's Case, supra,* and *Ware's Case,* 16 Wall. 566, JUDGE BOYD said: "But the evidence shows that the injury was sustained by the negligent use of the engine in not stopping it and in blowing the whistle as she (the plaintiff) approached. It would be carrying the obligation of the Turnpike Company beyond that required or authorized by the authorities to hold that its duty to the public required it to see that the servants of White were not thus negligent, although the use of the steam engine was not a nuisance *per se* and could be operated so as not likely to do any injury to anyone using the road. It would be requiring too much of it to make it take such precautions against accidents when letting out lawful work to an independent contractor. It must be admitted that the work to be done was lawful and the company had the right to assume that there would be no such negligence as that

complained of, which was entirely collateral to and not a probable consequence of the work contracted for. To hold the company to such a strict liability would practically forbid it from having such work done by contractors as it would have to keep its own agents on engines to see that there was no negligence on the part of the contractors or their servants." This statement of JUDGE BOYD's was quoted at length and approved in the later case of *Symons* v. *Road Directors,* 105 Md. 254.

It is also urged on behalf of the appellant that the question whether the injury might reasonably have been anticipated by the defendant as a probable consequence of the work contracted to be done was one of fact for the jury. That, of course, is the general rule (*Bonaparte* v. *Wiseman,* 39 Md. 12; *P., B. & W. R. Co.* v. *Mitchell, supra*), but here we are considering the legal sufficiency of the plaintiff's evidence, the burden being upon her to show that the defendant was guilty of negligence. There was no evidence to show that the injury might have been anticipated as a probable consequence of the work in which the contractor was engaged. On the contrary, as we have said, the work was done in the usual way, and all the evidence tends to show that there was no reason why the defendant should have anticipated any injury to persons using the sidewalk. The mere fact that the servant of the contractor fell and injured the plaintiff would not justify an inference that the injury was caused by the negligence of the defendant, especially as it was shown to have been due entirely to the negligence of the contractor's servant, which the defendant had no reason to anticipate. *Joyce* v. *Flanigan,* 111 Md. 481. The maxim *res ipsa loquitur* cannot aid the plaintiff in this case. The man who fell and injured her did not fall from the defendant's building, but from the stage or scaffold which was not under its management or control. The case most frequently referred to in this State as containing the true statement of the rule is the case of *Scott* v. *London Dock Co.,* 3 Hurl. & Colt. 596, where

it is said: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or its servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." *Howser* v. *C. & P. R. R. Co.,* 80 Md. 146; *Decola* v. *Cowan, supra; Walter* v. *Baltimore Elec. Co.,* 109 Md. 513; *Ches. Iron Works* v. *Hochschild,* 119 Md. 303.

Albert C. Putts, the president of the defendant, was called as a witness for the plaintiff and was asked if the painting that was done on the defendant's building was not done by the defendant, and he answered, "Yes." He was then asked, "Your company was having the building painted?" to which he replied, "Yes, we gave the contract to have it painted." On cross-examination he was asked by counsel for the defendant to whom the appliances used in connection with the painting belonged. The plaintiff objected to the question, but the Court overruled the objection, and the witness answered that they belonged to Crooks, Zick & Company. After stating further that the defendant had nothing to do with the work, did not employ the men engaged in it, and had no control over them or the appliances and methods used in doing the work, the witness was asked on re-direct examination by counsel for the plaintiff if the defendant took "any precaution to safeguard the travel on the sidewalk" or did anything "to protect the pedestrians walking along the street under the ladder," which questions were objected to by the defendant, and the Court refused to permit the witness to answer them. These rulings formed the subject of the first three exceptions. The witness having stated in his examination-in-chief that the painting "was done by" the defendant, and that the defendant "gave the contract to have it painted," the defendant had a right to have him explain and to interrogate him as to the extent of the defendant's con-

nection with the work. The questions asked in the second and third exceptions did not relate to any matter referred to in the cross-examination, and there was, therefore, no error in either of those rulings.

The fourth, fifth, sixth and tenth exceptions are to the refusal of the Court below to permit the witnesses to say whether they had ever known paint buckets, brushes or ropes to fall from ladders or scaffolds used in painting buildings. We see no error in these rulings. The plaintiff was not injured by the falling of a paint bucket or brush, and even if proper care required the defendant to provide against injuries from such causes, it would not follow that it was its duty to anticipate injury from the falling of a man from the scaffold. Mr. Israel stated that it was not necessary as a general thing to erect barriers on the sidewalk to warn persons against using it when a building is being painted from a suspended stage, and that with forty-three years' experience he had never known a man to fall from a stage. Mr. Thomas, who had been a painter for thirty-three years, testified that he had never seen a man fall from a swinging scaffold. They were asked by the plaintiff's counsel whether, in their opinion, the suspension of a stage above a sidewalk "made the use of" the sidewalk more dangerous or dangerous, and the seventh, eighth and ninth exceptions are to the refusal of the Court to permit those questions to be answered. The burden was on the plaintiff to show that the injury was such as might reasonably have been anticipated, as a probable result of the work that was being done, and that could not be shown by the opinion of the witnesses that the suspended stage rendered the use of the sidewalk more dangerous or dangerous. That was the very question the jury had to decide upon all the evidence in the case, and it was incumbent upon the plaintiff to produce evidence from which the jury could infer that the suspension of the stage made the "use of" the sidewalk dangerous. There was nothing in the conditions surrounding the scene of the accident that would suggest the

propriety of allowing a witness, who was familiar with those conditions, to express an opinion as to whether the suspension of the stage rendered the use of the sidewalk unsafe, and the rule that allows a witness to state that a particular road, with which he is familiar, is in a dangerous condition, should not, for obvious reasons, be applied in this case. But even if this is not so, it is not probable that the plaintiff was prejudiced by the rulings, for the witnesses had already stated that they had never known a man to fall from a swinging scaffold. Mr. Thomas was asked in the examination-in-chief if he had ever known a man to fall from a painter's scaffold and he answered, "Yes." On cross-examination it developed that he did not mean that he had seen a man fall from a suspended scaffold, but that he had seen one fall from a different kind of scaffold, and the defendant then moved that his statement that he had seen a man fall from scaffold be stricken out, and the eleventh exception is to the granting of that motion. The question in the case was whether there was any reason to anticipate injury from the falling of a man from a ladder such as was used in painting the defendant's building, and the fact that a man had been known to fall from a different kind of scaffold would not have aided the jury in determining that question. It would not follow because a man had been known to fall from a different kind of ladder that a painter would likely fall from one of the kind referred to in this case. It might very well be that one could be used without any risk of injury to persons on the sidewalk while the other could not.

Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*