505 A.2d 494

**Catherine ROWLEY**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE et al.**

**No. 34, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 5, 1986.

Michael Marshall (Henry L. Belsky and Schlachman, Potler, Belsky & Weiner, P.A., on brief), Baltimore, for appellant.

William R. Phelan, Jr., Asst. City Sol., for Baltimore City (Benjamin L. Brown, City Sol. for Baltimore City, James L. Prichard, Asst. City Sol. for Baltimore City on brief), Baltimore, for appellees.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

McAULIFFE, Judge.

The interesting question raised by this appeal is whether one who engages an independent contractor may be liable to an employee of that contractor for injuries causally related to a defective condition of the premises resulting from the negligent failure of the contractor to accomplish the repairs he was directed and empowered to make by the terms of the contract. We hold that under the facts in this case there is no liability.

The principals in this unfortunate occurrence are: the Mayor and City Council of Baltimore (the "City"), who owned the Baltimore Convention Center; Facility Manage-

ment Inc. of Maryland (FMI), who contracted with the City to assume management and operation of the Convention Center;[1] and Catherine Rowley (Rowley), who was employed by FMI as a security guard at the Convention Center.

Rowley was beaten, raped, and robbed by an unknown assailant at 2:20 a.m. on August 22, 1980, while working at the Convention Center. The evidence permitted a finding that her assailant gained entrance to the building through a defective perimeter door located near the security office. This door was one of four comprising an employee and delivery entrance, and was defective by reason of an inoperable locking device.[2] This defect had existed for eleven months, and had been reported to FMI on a number of occasions during that time by Rowley and others.

Under the terms of its agreement with the City, FMI had the obligation of performing all routine maintenance and repairs at the Convention Center, and it is clear this included the obligation to procure the repair of the locking mechanism of this door.[3] Additionally, FMI assumed "full respon-

---

1. The original contract was between the City and Hyatt Management Corporation (HMC), a wholly owned subsidiary of Hyatt Corporation. As a result of an internal reorganization of the Hyatt corporate structure, HMC was permitted to assign its interest in the contract to FMI, an indirect wholly owned subsidiary of Hyatt Corporation's parent company, HG, Inc. For simplicity, and because the legal effect is the same, we refer to FMI as an original party to the contract.

2. The perimeter doors were equipped with "panic" or "crash" bars on the interior, and were ordinarily locked by raising the bar and locking it in that position with a hex key. In this configuration the door could be opened by pressure on the bar from within, but could not be opened from the outside. The mechanism on the door in question could not be secured in the locked position, and although there was no handle on the outside of the door it could be opened by an insertion of a person's fingers or other object between the doors.

3. The contract required FMI to perform "[b]uilding operations and maintenance, including ... routine repairs." Funds to accomplish these repairs were available to FMI from periodic appropriations of the City made pursuant to an annual operating budget. Capital expenditures were within the discretion of the City.

sibility for management and direction" of the Convention Center, including the responsibility for rental of temporary and permanent space, booking of events, advertising and marketing, supervision of food and beverage sales and catering, security, management of events, and related matters. The City retained policy oversight, including the power to disapprove bookings of attractions and conventions it considered inappropriate.

Rowley brought an action in negligence against the City in the Circuit Court for Baltimore County, alleging that as owner of the Convention Center the City had a duty "to provide a safe and secure place for the general public and people working in the Convention Center," and that notwithstanding its knowledge that the building was neither safe nor secure the City failed to take remedial action. Trial by jury was terminated when Judge J. William Hinkel directed the entry of a verdict in favor of the City at the conclusion of the plaintiff's evidence. That judgment was affirmed by the Court of Special Appeals, *Rowley v. City of Baltimore*, 60 Md.App. 680, 484 A.2d 306 (1984), and we granted certiorari.

Rowley concedes that the City's legal relationship with FMI was that of employer and independent contractor, and that liability cannot be imposed on the City under the doctrine of *respondeat superior.* She contends, however, that because of its contractual relation with FMI, the City owed to her certain non-delegable duties that were breached.

■ The general rule is that the employer of an independent contractor is not liable for the negligence of the contractor or his employees.[4] *Restatement (Second) of Torts* § 409 (1965).

---

**4.** The first recognition of the independent contractor's defense appears to have been in cases involving the hiring of horses and a driver from a liveryman. *Laugher v. Pointer* (King's Bench 1826) 5 B. & C. 903, 108 Eng.Rep 204. For a discussion of the history of the rule *see*

Various reasons have been advanced for it, but the one most commonly accepted is that, since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it.
*Prosser and Keeton on The Law of Torts* § 71 at 509 (W. Keeton 5th ed. 1984) (footnotes omitted).

The general rule is riddled with a number of common-law exceptions that have practically subsumed the rule.[5] As noted in comment *b* to § 409 of the Restatement, these exceptions fall into three broad categories:

1) Negligence of the employer in selecting, instructing, or supervising the contractor.

2) Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff.

3) Work which is specially, peculiarly, or "inherently" dangerous.

The generally recognized exceptions to the rule of non-liability are collected at §§ 410–429 of the Restatement. Sections 410–415 deal with liability imposed by reason of actual fault on the part of an employer of an independent contractor. Appellant does not suggest the City is liable upon any such theory. Rather, she relies upon a theory of vicarious liability pursuant to one or more of the principles collected in §§ 416–429. The introductory note to that portion of the Restatement is instructive:

The rules stated in ... §§ 416–429, unlike those stated in ... §§ 410–415, do not rest upon any personal negli-

---

A. Conard, R. Knauss, and S. Siegel, *Agency, Associations, Employment, Licensing and Partnerships* ch. 3 § 3, at 117–18 (1977).

**5.** Approximately 50 years after the general rule was adopted the court in *Bowers v. Peate*, 1 Q.B.D. 321 (1876) recognized an exception to the rule and held an employer liable when the foundation of the plaintiff's building was undermined by a contractor's excavation.

gence of the employer. They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault. They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. The liability imposed is closely analogous to that of a master for the negligence of his servant.

The statement commonly made in such cases is that the employer is under a duty which he is not free to delegate to the contractor. Such a "non-delegable duty" requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted. Such duties have been recognized in a series of exceptions to the "general rule" of non-liability stated in § 409, which are stated in [§§ 416–429].

Appellant's claim is that the City owed to her a non-delegable duty to maintain the premises of the Convention Center in reasonably safe condition for her use. This duty arose, she suggests, from the status of the City as: 1) owner and occupier of the premises (Restatement § 343), 2) a municipal government maintaining a building for the use of the public (§ 418), and 3) employer of an independent contractor, *Bauman v. Woodfield*, 244 Md. 207, 217, 223 A.2d 364 (1966).

We agree that the City had a non-delegable duty to maintain the premises in a reasonably safe condition, and that the existence of that duty may be traced to several separate sources. We conclude, however, that under the circumstances of this case the duty did not extend to the independent contractor and its employees with respect to defects arising from the failure of the contractor to accomplish the very repairs it had undertaken to perform. We shall discuss in greater detail the applicable principles of law and the reasons underlying this conclusion.

■ In determining whether the City as owner of the Convention Center owed a duty to invitees, we must consider the threshold question of whether the City was in possession and control of the building. The liability of a landowner for injuries received on the land is dependent upon whether the device which caused the injury is in his possession and control. Section 328 of the Restatement defines an owner and occupier of land in terms of a possessor of land:

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

.(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

■ Here, there was no evidence that the City relinquished its possession to FMI or to any other entity.[6] There was no provision in the management agreement for FMI to lease the Center, nor did the agreement provide that FMI should have sole and exclusive control and possession of the Center.[7] *Compare Henley v. Prince George's County,* 305 Md. 320, 337–338, 503 A.2d 1333 (1986).

■ The standard of care owed by a possessor of land depends upon the status of the person on the land; *i.e.* whether he is an invitee, licensee, or trespasser. *Sherman*

---

**6.** We distinguish the facts of this case from those in which the employer of an independent contractor moves out of his building and surrenders temporary possession to the contractor while it is undergoing construction, demolition or repair. *See Hunt v. Jefferson Arms Apartment Co.,* 679 S.W.2d 875 (Mo.App.1984); *Colloi v. Philadelphia Elec. Co.,* 332 Pa.Super. 284, 481 A.2d 616 (1984); *Lunde v. Winnebago Industries Inc.,* 299 N.W.2d 473 (Iowa 1980). *See also* Restatement § 422, Comment *c.*

**7.** When land is leased to a tenant, the lessee becomes for the period of the lease both owner and occupier of the premises, subject to all the responsibilities of one in possession. *Prosser and Keeton on The Law of Torts* § 63, at 434 (W. Keeton 5th ed. 1984). See also Restatement § 355–356 (1965).

*v. Suburban Trust Co.*, 282 Md. 238, 242, 384 A.2d 76 (1978); *Macke Laundry Serv. Co. v. Weber*, 267 Md. 426, 298 A.2d 27 (1972). An invitee is a person invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business; the owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety will not discover.[8] *Sherman v. Suburban Trust Co., supra; Gray v. Sentinel Auto Parks Co.*, 265 Md. 61, 288 A.2d 121 (1972); *Lloyd v. Bowles*, 260 Md. 568, 273 A.2d 193 (1971); *Gast, Inc. v. Kitchner*, 247 Md. 677, 234 A.2d 127 (1967). Restatement § 343.

As applied to contractor's employees, § 343 is often referred to as the "safe workplace" doctrine under which one who employs an independent contractor has a duty to provide a safe workplace for the employees of the contractor. *Donovan v. General Motors*, 762 F.2d 701, 704 (8th Cir.1985) (applying Missouri law); W. Prosser, *The Law of Torts* § 67, at 374–75 (2d ed. 1955). *See also Baltimore Gas & Electric v. Thompson*, 57 Md.App. 642, 652, 471 A.2d 768 (1984). Under this doctrine, an employer has a duty to notify an employee of any latent or concealed dangers, provided he knows of the condition or with the exercise of ordinary care should have known of it. *Leonard v. Sav-A-Stop Services*, 289 Md. 204, 218, 424 A.2d 336 (1981);

---

8. The traditional rule is that a possessor of land is not liable to invitees for physical harm caused by obvious or known dangers. Recently, courts have refrained from applying this traditional rule of a possessor's immunity from liability for injuries from dangers known or obvious to an invitee, such as situations in which his attention is distracted from the danger or his only alternative is to take the risk and forego the legal right. For a discussion of this recent trend *see Prosser and Keeton on The Law of Torts* § 61, at 427 (W. Keeton 5th ed. 1984); F. Harper & F. James, *The Law of Torts* § 27.13 (1956). *See also* 35 A.L.R.3d 230 (1971, 1985 Cum.Supp.). Because we find that the duty owed by the City did not extend to appellant, we do not reach this issue.

*Bauman v. Woodfield, supra; Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 460–61, 67 A.2d 251 (1949); *Le Vonas v. Acme Paper Board Co.,* 184 Md. 16, 19–20, 40 A.2d 43 (1944). *See also Cutlip v. Lucky Stores,* 22 Md.App. 673, 682–84, 325 A.2d 432 (1974).

■ It is generally held that employees of an independent contractor are invitees on the property of the landowner. *Prosser and Keeton on The Law of Torts* § 61, at 419 (W. Keeton 5th ed. 1984); F. Harper and F. James, *The Law of Torts* § 27.12, at 1481 (1956); J. Dooley, *Modern Tort Law* § 19.06, at 444–48 (1982, 1985 Cum.Supp.). The duty of a landowner to an invitee is often referred to as "non-delegable." That is something of a misnomer, as the owner is free to delegate the duty of performance to another, but he cannot thereby avoid or delegate the risk of non-performance of the duty.

> [W]here one invites another to come onto premises ostensibly maintained by him, his duty to the invitee cannot be circumscribed by the employment of an independent contractor.

> J. Dooley, *Modern Tort Law* § 17.05, at 422–23 (1982, 1985 Cum.Supp.).

This principle may be found in the Restatement at § 425:

> One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business ... is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land ... in reasonably safe condition, as though he had retained its maintenance in his own hands.

Closely analogous is § 422, which provides:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for

physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land during the progress of the work, or

(b) after he has resumed possession of the land upon its completion.

Similarly, § 418 provides that a government under a duty to maintain any place in a reasonably safe condition for the use of the public cannot avoid liability to the public by entrusting the maintenance or repair responsibilities to an independent contractor.

The imposition of vicarious liability by the creation of these exceptions to the general rule of non-liability of the employer of an independent contractor is a matter of policy, designed to protect innocent members of the public. Whether the protection of these exceptions should be extended to subcontractors and their employees has been the subject of considerable comment in the courts and among the drafters of the Restatement. Some jurisdictions hold that the contractor's employees are within the protected class to whom the employer owes a non-delegable duty. *Lindler v. District of Columbia,* 502 F.2d 495, 498–99 (D.C.Cir.1974); *United States v. DeCamp,* 478 F.2d 1188 (9th Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct. 232, 38 L.Ed.2d 158 (1973) (applying California law); *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 25, 26, 437 P.2d 508, 513–14 (1968); *Giarratano v. Weitz Company,* 259 Iowa 1292, 147 N.W.2d 824, 834 (1967); *Vannoy v. City of Warren,* 15 Mich.App. 158, 166 N.W.2d 486, 489 (1968); *International Harvester Co. v. Sartain,* 32 Tenn.App. 425, 222 S.W.2d 854, 868 (1948). But the majority of jurisdictions hold that an employer's vicarious liability does not extend to employees of independent contractors. *Vagle v. Pickands Mather & Co.,* 611 F.2d 1212, 1217–19 (8th Cir. 1979) (applying Minnesota law), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980); *Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030, 1033–35 (5th Cir.1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518

(1978); *Craig v. Olin Mathieson Chemical Corp.*, 427 F.2d 962 (7th Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970); *Parsons v. Amerado Hess Corporation*, 422 F.2d 610, 614 (10th Cir.1970) (applying New Mexico law); *Lipka v. United States*, 369 F.2d 288, 292–93 (2d Cir.1966) (applying New York law), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); *Corban v. Skelly Oil Company*, 256 F.2d 775, 779–80 (5th Cir.1958) (applying Arkansas law); *Morris v. City of Soldotna*, 553 P.2d 474, 480–82 (Alaska 1976); *Sloan v. Atlantic Richfield Company*, 552 P.2d 157, 160 (Alaska 1976); *Welker v. Kennecott Copper Co.*, 1 Ariz.App. 395, 403 P.2d 330, 339 (1965); *Florida Power and Light Co. v. Price*, 170 So.2d 293, 298 (Fla.1964); *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659, 662 (Ky.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974); *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271, 277 (1963); *Humphreys v. Texas Power & Light Company*, 427 S.W.2d 324, 330–31 (Tex.Civ.App.1968); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash.2d 274, 635 P.2d 426, 429–31 (1981); *Epperly v. City of Seattle*, 65 Wash.2d 777, 399 P.2d 591, 597 (1965); *Potter v. City of Kenosha*, 268 Wis. 361, 68 N.W.2d 4 (1955).

In *King v. Shelby Rural Electric Cooperative Corp.*, *supra*, the Court of Appeals of Kentucky concisely stated the policy reasons why an employers' non-delegable duty should not extend to an employee of contractors hired to do the dangerous work which resulted in the harm:

Although there are strong social reasons why the employer of an independent contractor should be responsible to third parties negligently injured in the performance of work of an inherently dangerous nature, the reasons to extend this protection to the employees of an independent contractor are not so compelling.

Industrial workers are usually protected by Workmen's Compensation laws under which they may recover of their employer for injuries arising out of their work. This recovery may be had although the injury was

brought about by the employee's carelessness and absent any negligence on the part of the employer. The price of this social legislation is that when the employee accepts the benefits he releases the employer from tort liability for negligence.

In the case at bar the appellant was protected by and collected Workmen's Compensation from his employer, Electricom. The premiums for the Workmen's Compensation insurance carried by Electricom were undoubtedly a factor in the determination of the contract price between Electricom and Shelby, so that ultimately Shelby paid the premiums.

We can see no reason why appellant, simply because he was an employee of an independent contractor, should be placed in a better position than if he had been an employee of Shelby, in which case his recovery would be limited without question to the benefits provided by the Workmen's Compensation Act. Conversely, we see no valid reason why Shelby should be subjected to more liability simply because it engaged the services of a qualified independent contractor. Employers frequently farm out work which requires some special skill to an independent contractor skilled in that particular work. The imposition of additional tort liability upon the employer because of the selection of an independent contractor would have a tendency to discourage the practice of selecting skilled independent contractors and cause employers to do the work with their own, sometimes less skilled, work force. 502 S.W.2d at 663.

More recently, in *Tauscher v. Puget Sound, supra,* 635 P.2d at 428, the defendant claimed the employer of an independent contractor owed the contractor's employees a non-delegable duty of care based on the presence of an inherently dangerous activity. The Supreme Court of Washington, after reviewing the case law of various states, announced its rationale for limiting the employer's liability to third persons other than contractor's employees:

There are strong policy considerations behind limiting an owner's liability to those third parties other than employees of independent contractors. First, the rationale underlying the exception to the rule for nonliability, which is that we did not want an owner shifting his or her liability by hiring an independent contractor to perform a task, is not relevant in the case of an employee of an independent contractor. An owner who employs an independent contractor is already liable to *all* third persons, including employees of the independent contractor, for his or her own negligence in the hiring of the independent contractor and for injuries resulting from any latent defects on the land. *See Welker v. Kennecott Copper Co.*, 1 Ariz.App. 395, 403 P.2d 330 (1965); Restatement (Second) of Torts § 343 (1965). Thus, the law already imposes upon the employer a duty of due care. The employer's liability for damage resulting from the negligence of the independent contractor is limited to third parties largely because the employer has in a sense already assumed financial responsibility for the injuries to the employees in that the contract he or she pays to the independent contractor necessarily includes the cost of the insurance premiums that the independent contractor must pay for workers' compensation coverage. *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659 (Ky.App.1973); *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1218 (8th Cir.1979). The employee already has a remedy; one which the owner has paid for.

Secondly, under our workers' compensation statutory scheme, the employer is released from financial responsibility for on-the-job injuries to his or her employees. To hold an employer liable for injuries to employees of the independent contractor would subject the employer to a greater liability than if the employer had utilized his or her own employees. *King*, at 663; *Vagle*, at 1218; *Cochran v. International Harvester Co.*, 408 F.Supp. 598, 602–603 (W.D.Ky.1975)

Finally, to hold otherwise would serve to encourage owners to use their own employees (who may be inexpe-

rienced) and thereby escape liability for any negligent acts and conversely, discourage owners from hiring experienced independent contractors, who specialize in hazardous work. *Id.* at 430.

Furthermore, some courts cite to a Special Note in the Tentative Draft #7 of the *Restatement (Second) of Torts* (1962) to support the exclusion of contractor's employees from protection under all the exceptions. *See King v. Shelby Rural Electric Cooperative Corp., supra,* 502 S.W.2d at 662; *Tauscher v. Puget Sound Power & Light Co., supra,* 635 P.2d at 430 n. 7. The tentative draft contained similar language to the adopted version of the *Restatement,* and used words such as "others," "third persons" and "the public" to describe those persons to whom the employer owed a duty. The "Introductory Note" to the chapter of the draft containing the exceptions stated:

> The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now with relatively few exceptions regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third party liability, it has not been regarded as

necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

*Again, when the Sections in this Chapter speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included. Id.* at 17–18 (emphasis added).

The Special Note was never adopted by the American Law Institute and is therefore not authoritative. It is evidence, however, of the intent of the Restatement to limit an employer's liability under the exceptions.[9] The final version

---

**9.** In the "Discussion of Restatement of Law Second, Torts," 39 A.L.I. Proc. 244–49 (1962), Dean Prosser discussed the rationale for deleting the note from the Restatement as follows:

We now move on to the chapter on liability for the conduct of an individual contractor. . . .

The special note on page 17 was intended to take care of a problem which was raised at the meeting last year, and that is whether the various sections stated in that chapter—and there are some 25 of them all together—have any application to make the employer of an independent contractor liable to, first of all, the employees of the employer who may be injured through the contractor's negligence; and second, to the employees of the contractor.

The Restatement throughout has avoided any statement of liability to any employee. There are good reasons for that. In the first place, liability of an employer to an employee is now very largely governed by Workmen's Compensation acts. There are a few gaps in those statutes which don't cover a few situations, but the attempt to state any kind of general rule for those exceptional situations runs into the fact that the statutes vary so much around the country, and what is left of the common law rules has been so much affected by statutory enactments of factory acts, statutes knocking out assumption of risk, and the like, that there is no such thing left as a uniform common law of liability to any employer's own employees.

Consequently, throughout the Restatement nothing has been said about liability to employees. Possibly there should be somewhere at the very beginning of the whole Torts Restatement an introductory note pointing that out.

of the Restatement leaves the meaning of the words "others," "another," and "the public" undefined in order for

Throughout we have spoken of liability to another, liability to others, liability to third persons, without making any special exception as to employees. And, in general, that does very little harm. It has been generally understood. The Restatement has caused no trouble on that score. In some respects the restatement of agency has taken care of it by stating some of the employer's responsibilities, and the thing simply hasn't been a matter for concern in the Torts Restatement at all.

Now we come to a chapter where there is an especial likelihood that someone's employees will be injured by the contractor's negligence, or at least the question arises whether there shouldn't be liability to the employee for such negligence; and these words "another," "others," "third persons," and the like might be open to the interpretation that they do include employees.

It is for that reason that we want some kind of note at the beginning saying that employees are just not covered one way or the other in this chapter.

When you come to the employer's liability to the employees of the independent contractor, you find, first of all, one very definite group of cases holding that where work is done upon the employer's premises, of which the employer is in possession and control, the employees of the contractor are invitees or business visitors of the employer, and consequently he has a duty to use reasonable care to see that the premises are safe for the work. That is fully stated in Section 343 in connection with business visitors.

When you get off of the employer's premises, you find, first of all, a prevailing set of cases which say that the employer is not liable to the contractor's employees at all. One reason that liability has not developed is the workmen's compensation acts, which place the responsibility for insuring the workman upon the independent contractor, with insurance rates calculated upon the basis of his risks and his experience; and while it is true that there may be third party liability, this so closely tied in with the workmen's compensation rules in the various jurisdictions that the courts have not wanted to get into it. And with that in mind this comment was written.

\* \* \* \* \* \*

There is so much lack of uniformity on this—it is so closely tied in with the workmen's compensation acts of the particular jurisdictions and the third party rules under those acts—that it appears undesirable, if not impossible, to state anything at all about what the liability is to employees of an independent contractor. I think, therefore, that the paragraph at the bottom of page 17 should be rewritten, and ask you to recommit it to me in order to take a strictly neutral position, point out why the Restatement does not deal with employees at all, and say that, specifically, we do not express any opinion whatever upon the matter one way or the other.

each state to interpret the provisions according to their case law and workers' compensation statutes. *See Tauscher v. Puget Sound Power & Light Co., supra,* 635 P.2d at 430 n. 7.

We are not required to here determine whether the principles of §§ 416–429 should be interpreted so as to exclude, in every instance, the existence of a duty for the benefit of independent contractors and their employees. We hold that where, as here, the independent contractor has assumed responsibility for maintenance and repairs, and the harm has occurred to the contractor or his employee as a result of a defect arising from the failure of the contractor to make those repairs, nothing in §§ 416–429 operates to impose liability upon the person who hired the contractor. Moreover, comparing the duties contemplated by §§ 416–429 with those of a landowner (§ 343) or the closely related duty of an employer to furnish a safe workplace, we find no policy or other distinction that would justify a different result where the latter duties are involved. Thus, whether the duty to maintain premises in a reasonably safe condition arises form the status of landowner, or employer, or from the performance of a proprietary function by a governmental entity, the result is the same.[10]

Our holding does not affect the existing law as it relates to a duty owed to others. Thus, as to members of the general public and adjacent landowners the duty remains non-delegable. Furthermore, the usual concepts of duty owed by a landowner-employer to an independent contractor and his employees to maintain in a reasonably safe condition the land upon which they work, or over which they may be invited to travel to reach their work, remains

---

**10.** For a collection of cases discussing the effect of a contract to repair on the duty of the employer of an independent contractor to provide a safe place to work, see the annotation at 31 A.L.R.2d 1375. *See also* J. Dooley, *Modern Tort Law* § 19.17, at 466 (1982, 1985 Cum.Supp.) stating that "[a] limitation on [the] duty to provide a safe place to work is the occupier's nonliability for injuries caused by the very conditions the contractor was employed to correct."

intact. An employee of an independent contractor injured on the employer's premises by reason of a latent defect (known to the employer but not to the contractor or his employee) which existed when the work began has recourse against the employer. *Bauman v. Woodfield, supra,* 244 Md. at 216–17, 223 A.2d 364; *Le Vonas v. Acme Paper Board Co., supra,* 184 Md. at 20, 40 A.2d 43; *Cutlip v. Lucky Stores, supra,* 22 Md.App. at 682–83, 325 A.2d 432. Similarly, the employee of an independent contractor invited to cross land of the employer to reach a workplace thereon may recover from the employer for injuries resulting from a defective condition of the premises within the employer's control, and not within the duties of the contractor to repair. Nor does our decision today affect the possible liability of an employer who by his agreement with the contractor retains significant control over, and responsibility for, the safety of the workplace.

■ We turn to appellant's argument that the City is liable for the failure of the contractor "to perform the thing contracted to be done," *i.e.* maintenance and repair of the Convention Center. To support her contention, appellant cites *Deford v. State, Use of Keyser,* 30 Md. 179 (1869), *P., B. & W.R. Co. v. Mitchell,* 107 Md. 600, 69 A. 422 (1908), and *Weilbacher v. Putts Co.,* 123 Md. 249, 91 A. 343 (1914), for the proposition that the employer is liable if the injury is caused by the work contracted to be done. We find no merit in this argument.

Initially we note that *Deford, P., B. & W.R. Co. v. Mitchell,* and *Weilbacher* all deal with the duty of a landowner to third persons other than employees of independent contractors, and the doctrine of those cases is not affected by the narrow holding of this case. Secondly, we observe that the concept of "the work contracted to be done" is a part of a rule of limitation of liability, and does not operate to create liability where none would otherwise exist. This

conclusion is supported by the following portions of comments to §§ 422 and 426 of the Restatement:

> The contractor's negligence must result in a failure to put and maintain the land in that safe condition in which it is the duty of the employer to put and maintain it. The employer is therefore not subject to liability for any casual act of negligence in the operative detail of doing the work which, however injurious to another, does not prevent the land from being put or maintained in safe condition. This is "collateral" negligence, for which the employer is not responsible ... Comment *e* to § 422.

> The kind of negligence covered by this Section, for which the employer is not liable, is commonly called by the courts "collateral negligence," meaning negligence collateral to the contemplated risk. Sometimes it is called "casual negligence." It has sometimes been described as negligence in the operative detail of the work, as distinguished from the general plan or method followed or the result to be accomplished. Frequently this distinction can be made, since negligence in operative details will often not be within the contemplation of the employer when the contract is made. The distinction is not, however, essentially one between operative detail and general method. It is rather one of negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk. Comment *a* to § 426.

The negligence of FMI was clearly not "casual" or collateral to the contemplated risk. The legal effect of this conclusion is that the City would be liable for damages caused by the breach of a duty resulting from that negligence. It does not, however, mean that the City will be liable where it has breached no duty owed by it to appellant.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.