547 A.2d 1080

David A. PARKER, et ux.

v.

NEIGHBORHOOD THEATRES, INC., et al.

No. 1727, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Sept. 30, 1988.

Certiorari Denied Nov. 29, 1988.

Steven M. Nemeroff (Wortman, Marcus & Nemeroff, on the brief), Beltsville, for appellants.

Andrew Janquitto (T. Rogers Harrison and Mudd, Harrison & Burch, on the brief), Towson, for appellee, Myron Cowell, Inc.

Thomas A. Farrington (Farrington & Smallwood, on the brief), Landover, for appellee, Neighborhood Theatres, Inc.

Argued before WILNER and BISHOP, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, (retired) Specially Assigned.

This case involves a claim for personal injuries sustained by an employee of a general contractor on June 19, 1985. The two defendants are the property owner and a subcontractor. On November 16, 1987, the case was heard by a jury in the Circuit Court for Prince George's County and, at the conclusion of the employee's case, the trial judge granted motions for judgment for both defendants. This appeal followed.

The appellant herein, David A. Parker, is employed as a laborer by Keller Brothers, Inc., a general contractor engaged by one of the appellees, Neighborhood Theatres, Inc. (hereinafter NTI), to construct two wings to NTI's theatre complex. The remaining appellee is A. Myron Cowell, Inc. (hereinafter Cowell), who was employed by NTI as a subcontractor to perform the brick and masonry work on the project.

Although the evidence is conflicting as to the exact date when a 4′ × 4′ hole was cut in the third floor roof to allow

the installation of a smoke hatch, it is undisputed that a Keller Brothers employee cut the hole several days or a week before June 19th, the day of the accident. The hole was covered by two unsecured 4' × 8' sheets of plywood, but no guardrails, toe boards, or warning signs were erected.

Cowell was completing masonry work on a higher portion of the theatres and it had placed twenty sheets of plywood on the roof to use as a base for scaffolding in order not to damage the roof. The plywood belonged to Keller. When Cowell completed the masonry work, one of its employees stacked the plywood into three piles, and appellant and another laborer employed by Keller were directed by their foreman to clean up the roof and remove the plywood.

After the Cowell employee left the roof, appellant and his co-worker carried the plywood sheets to the edge of the roof where they were lowered to the ground by a crane. When appellant picked up the last sheet from one of the piles he walked forward one step and fell thirty feet to the concrete floor below. Appellant was at the rear of the sheet, and his co-worker, with his back to the plywood, was at the front end. As both men started out facing the same direction, appellant fell through the hole in the roof which he could not see below the plywood. He denied any prior knowledge of the existence of the 4' × 4' hole.

Appellant received Worker's Compensation benefits and then filed this third party action against NTI and Cowell. We shall discuss other facts as they pertain to the various allegations of error raised by the appellant.

## I

■ Appellant's first allegation of error arises from the refusal by the trial judge (McKee, J.) to admit into evidence the Prince George's County Code which, appellant claims, imposes upon a property owner a non-delegable duty of maintaining the premises in a reasonably safe condition during construction. The Code, considered in combination

with Restatement (Second) of Torts, section 424, appellant suggests, subjects NTI to a non-delegable duty to ensure compliance with the Code which cannot be avoided by employing an independent contractor to perform the work. In support of his argument, appellant cites *Council of Co-Owners v. Whiting-Turner*, 308 Md. 18, 517 A.2d 336 (1986), and *Gardenvillage Realty Corporation v. Russo*, 34 Md.App. 25, 366 A.2d 101 (1966). The latter, he claims, is indistinguishable from the present case.

The Prince George's County Code provisions sought to be applied herein include Subtitle 4101, section 104.2, 1983 Edition, requiring the owner to keep the premises in a safe and reasonable condition during construction and to provide all safeguards imposed by the Prince George's County Building Code. Subtitle 4101, section 1313.4 imposes the responsibility upon the owner of protecting floor openings by installing guardrails and toe boards.

Section 424 of the Restatement (Second) of Torts states:

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

If the duty imposed is an absolute one, the employer (owner) is subject to liability for the failure of the contractor to provide the required safeguard or precaution, even though the contractor has exercised all reasonable care in his effort to do so.

Section 424 Comment B.

In *Whiting-Turner, supra,* the Council of Unit Owners and three individual unit owners of a condominium in Ocean City sued the general contractor, developer, and architects involved in the construction of the building for alleged negligent construction resulting in economic loss to the various plaintiffs. The Court of Appeals expressed no opinion on the liability of the creator of the project based

upon a non-delegable duty with respect to unreasonably dangerous conditions caused by the construction. The Court, however, recognized that liability of an owner may arise from a non-delegable duty imposed by statute, including those contained in building codes intended as safety measures.

In *Gardenvillage, supra,* this Court applied the non-delegable duty principle to affirm a judgment entered in favor of tenants and their invitees against the developer/owner and the general contractor for injuries resulting from the collapse of a defective concrete porch slab. The Baltimore City Building Code, we held, imposed upon the owner a non-delegable duty to build the structure in accordance with the Code. The owner, however, retains a right of action against the contractor for indemnification where the owner is not guilty of any independent negligence, but is responsible in damages solely by reason of the vicarious liability arising from the statutory duty that he cannot delegate to anyone.

The statutes and cases cited by appellant are correct statements of Maryland law. The problem is that the law appellant cites has no application to the case before us. The nature and extent of a tort duty recognized by law depends in part on the status of the party upon whom it is sought to be imposed and upon his relationship to the party claiming the benefit of it. *See, Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986). We point out that in the cases cited by appellant the parties seeking damages from the owner on the theory of vicarious liability have no contractual relationship with the owner. In one case they are private property owners seeking economic damages; in the other they are tenants and their invitees who were injured in the collapse of a concrete porch. Additionally, *Whiting–Turner* involved economic loss by purchasers of the units due to a latent defect resulting from improper installation of utility shafts and wiring; *Gardenvillage* included a construction defect that resulted in personal injury to persons in the public sector. In both cases the

owner was in full possession of the property. By contrast, the claimant herein is an employee of the contractor who created the dangerous condition that resulted in the injury. The owner, moreover, had closed the complex during construction.

The general rule is that the employer of an independent contractor is not liable for the negligence of the contractor or his employees. Restatement (Second) of Torts, section 409 (1965). Exceptions to the rule, as noted in Comment b of Section 409, fall into three broad categories:

1.  Negligence of the employer in selecting, instructing or supervising the contractor.
2.  Non-delegable duties of the employer arising out of some relation toward the public or the particular plaintiff.
3.  Work which is specially, peculiarly, or inherently dangerous.

For the purposes of this discussion, appellant is relying on the second category of exceptions to the general rule and alleges vicarious liability from a duty that is not delegable.

The imposition of vicarious liability by the creation of the exceptions to the general rule is primarily a policy decision, the purpose being the protection of the public generally. While some jurisdictions hold that the contractor's employees are within the class to whom the owner owes a duty, the majority of jurisdictions hold that an owner's vicarious liability does not extend to employees of independent contractors.[1]

In *Rowley, supra,* a security guard employed by an independent contractor sued the Mayor and City Council of Baltimore for injuries she received while working at the city convention center. Specifically, her injuries resulted from an assault by an unknown assailant who gained entrance through a door with a faulty locking mechanism. The

---

[1]. *See, Rowley v. City of Baltimore, supra,* at 467–68, 505 A.2d 494, and cases cited therein.

contractor's duties included all routine maintenance and repairs at the convention center. The plaintiff's suit against the City claimed that she was owed by the City a non-delegable duty to maintain the premises in a reasonably safe condition for her use.

The Court (McAuliffe, J.) said:

We hold where, as here, the independent contractor has assumed responsibility for maintenance and repairs, and the harm has occurred to the contractor or his employee as a result of a defect arising from the failure of the contractor to make those repairs, nothing in sec. 416–429 (exceptions to the rule of non liability) operates to impose liability upon the person who hired the contractor.

Although *Rowley* is not a construction case, we think the same reasoning should be applied to the present case. Appellant was injured solely by reason of the negligence of his employer and co-workers who cut the hole in the roof and failed to secure a cover for the opening by a rail, toe boards, or any warning sign. The appellant was protected by Worker's Compensation through his employer, Keller Brothers. The premiums paid for the accidental injury coverage were a consideration in the contract price between Keller Brothers and NTI.

Paraphrasing what the Court said in *Rowley*, we see no valid reason why the appellant herein should be placed in a better position than if he were employed by NTI, in which case he would be limited to compensation benefits only. Conversely, NTI should not be subjected to greater liability because it engaged a qualified independent contractor to build the additions to its theatres.

We hold, therefore, that vicarious liability of the owner may not be predicated upon a statutory non-delegable duty where the injuries to an employee of a contractor arise solely from the negligence of the contractor in failing to maintain a reasonably safe work place. We concede that the Prince George's County Code is applicable to an owner and that the duties imposed thereunder may not be delegat-

ed to a contractor. As to the public generally, the duty remains, but it does not extend to employees of the contractor who already have a remedy paid for by the owner.

## II

■ Appellant's second argument relates to liability of NTI based upon its alleged retention of control of the premises during construction. Under common law principles, according to appellant, the owner owes a non-delegable duty to invitees to maintain the premises in a safe and reasonable manner. In this regard, appellant cites section 414 of the Restatement (Second) of Torts relating to control of the work as distinguished from control of the premises set forth in section 422.

> Sec. 414. One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Comment b to section 414 describes the applicability of the rule as follows:

> The rule stated in this section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractor's work is being so done, and has the opportunity to prevent it by exercising the power of control he has retained in himself.

Comment c sets forth the limitations upon the application of the rule:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do his work in his own way.

Whether NTI retained the control necessary to invoke section 414 of the Restatement must be measured by the following facts. The underlying contract between NTI and Keller Brothers was entered into September 4, 1984. The contract is a standard form AIA document setting forth that the contractor is solely responsible for all construction "means, methods, techniques, sequences and procedures." It specifically required the contractor to "be responsible for initiating and maintaining all safety precautions and programs in connection with the work."

Keller Brothers began the job on a full time basis early in 1985 when all of the theatres in the complex were closed. NTI engaged other subcontractors to perform work at the construction site, including erection of signs, decorating, installing seats and projection equipment. These contracts had nothing to do with the roof or the accident. At the same time, Keller Brothers employed various subcontractors to perform different aspects of the total job. The work to be performed by NTI's own employees was to follow the construction phase and was not scheduled to begin until several months after the accident.

Two vice presidents of NTI, Frank Novak and Roy Tompkins, made periodic visits to the site for the purpose of ensuring that the work proceeded without delay, in accordance with the contract specifications, and within the cost

figures in the contract. Novak, who was stationed in Richmond, Virginia, visited the site several times a month; Tompkins was present at the site two or three times a week. He would make visual inspections and converse with the job superintendent, Harry Hankey, concerning any problems that needed to be discussed and, if necessary, he would inform Novak of the substance of the conversations. This routine continued through the five months of the contract. Neither Novak nor Tompkins was aware of the hole in the roof and neither man had ever climbed to the roof for any purpose.

The contract permitted NTI to make changes in the work within the scope of the specifications, to stop the work if it did not meet the requirements of the contract documents, and to make job site inspections. There is no allegation that any activity by NTI employees was in any manner a proximate cause of appellant's injury.

Although appellant argues that NTI's retention of control creates direct liability by reason of the non-delegable duty imposed by section 414, it is, in reality, still a case of alleged vicarious liability, since the cause of appellant's injury was the failure of Keller Brothers to secure the opening until the smoke hole cover was installed. As we have already stated, NTI knew nothing about the opening and none of its employees was ever on the roof. Appellant argues at length about the elements of control it was prepared to introduce except for the trial court's refusal to admit the same. Appellant proffered over 100 pages of correspondence from the owner, NTI, "of going over details of participation with the contract, outside the contract, with subcontractors, with inspections where the owner was on the site two days before, looked up and saw the hole cut in the metal deck which he says with plywood over it. It is not open." Appellant also intended to introduce a diary kept by Novak detailing the progress of the work and Novak's business records rejected by the court as "that pile one foot high."

The court's basis for granting the motion to suppress appellant's proffered evidence was that appellant had not a scintilla of evidence that NTI participated in the control and manner in which the construction took place. In other words, appellant failed to establish that NTI controlled the contract. We agree. Appellant's evidence, in order to generate a jury issue, was required to show some evidence that the contractor, Keller Brothers, was not free to perform its work, including method and operative detail, due to a right of supervision retained or exercised by the owner. This he could not establish. A determination of liability under the retention of control doctrine requires a showing that the owner "had the right to control the details of his [architects'] movements during his performance of the business agreed upon." *See, Cutlip v. Lucky Stores, Inc.*, 22 Md.App. 673, 325 A.2d 432 (1974), where the widow of an ironworker killed on the job due to a portion of the building collapsing sued the owner, Lucky, on the theories of agency, retention of control over the architect, and control over the premises. *See also, Freeo v. Victor A. Perosi, Inc.*, 54 A.D.2d 684, 387 N.Y.S.2d 268 (1976).

The key element of control, or right to control, "must exist in respect to the very thing from which the injury arose." *Gallagher's Estate v. Battle*, 209 Md. 592, 122 A.2d 93 (1956); *Cutlip, supra.* While the contract is the operative source in seeking limitations of authority from the owner to the contractor, the relation may be changed by conduct of the parties outside the contract. Despite the lengthy cross-examination of Novak with respect to his construction experience and duties performed during this construction, no evidence of operative control emerged. The court's ruling that appellant failed to establish any retention of control by NTI was not error. The question of the existence of a duty is for the court. *Cutlip, supra.*

Additionally, appellant has not provided the Court with any authority that an employee of an independent contractor injured by the negligence of his own master is a person intended to be included among the class of persons to whom

the owner owes a non-delegable duty of reasonable care. As we have already indicated, the *Whiting–Turner* and *Gardenvillage* plaintiffs were members of the public, not employees on the job already covered for accidental injuries. No matter how appellant phrases it, what he is unsuccessfully attempting is an end run on the Worker's Compensation Law.

■ We find no error in the court's refusal to admit either the OSHA (Occupational Safety and Health Administration) or MOSH (Maryland Occupation Safety & Health) standards for the reasons already stated—lack of evidence that NTI created the condition or controlled the performance of the contract. *See, Murphy v. Stuart M. Smith, Inc.,* 53 Md.App. 640, 455 A.2d 69 (1983), which holds that MOSH does not impose a statutory duty on an employer to maintain a safe place of employment for another's employees; the duty created by MOSH runs from the employer to its own employees, with one exception not relevant here. *See also, Baltimore Gas and Electric Co. v. Thompson,* 57 Md.App. 642, 471 A.2d 768 (1984).

■ Finally, we hold that the court did not err in granting Cowell's motion for judgment. Cowell had no physical or actual control over the work area where the hole in the roof was located. Nor did it have any contractual responsibility for cutting or covering the opening. Even were we to assume that Cowell was negligent in stacking plywood over the existing plywood, such negligence could not be a proximate cause of appellant's injuries. Keller Brothers had the responsibility of covering the opening in the roof. Its failure to secure the cover was the proximate cause of the injuries sustained by its own employee. If the covering had been nailed, obviously, appellant could not have picked it up.

The duty owed by a subcontractor, on a multiple-employer construction site, to employees of other contractors does not depend on knowledge of danger, but on whether the subcontractor created or controlled the dangerous condition.

*Finkelstein v. Vulcan Rail and Construction Co.,* 224 Md. 439, 168 A.2d 393 (1960).

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.