Michael D. **WELLS** and Paula Wells, Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY,** Defendant and Third–Party Plaintiff,

v.

**MONTEL METALS, INC.,** Third–Party Defendant.

Civ. A. No. S–91–3389.

United States District Court, D. Maryland.

Dec. 4, 1992.

---

**22.** Defendant's reply memorandum exhibit A.

**23.** The Pittsburgh incident took place after FSLI renewed the contract.

William C. Moyer, Lorch & Naville, New Albany, IN, and John J. Pyne, Pyne & Derry, P.C., Chevy Chase, MD, for plaintiffs.

Andrew H. Marks, Patrick W. Lee, Kent W. Gardiner, and R. Colin Keel, Crowell & Moring, Washington, DC, for defendant and third-party plaintiff.

Douglas B. Schoettinger and Earl W. MacFarlane, Smith, Somerville & Case, Baltimore, MD, for third-party defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This diversity case is before the Court on the motion of General Electric Company ("General Electric") for summary judgment. The nature of the action is a claim for personal injuries sustained by one Michael D. Wells ("Wells"), an employee of a company named Montel Metals, Inc. ("Montel"), which is in the business of dismantling disused industrial plants. In 1990, General Electric, which had previously utilized Montel's dismantling services, contracted with Montel to perform the dismantling and salvage work at Building 1 of a disused General Electric appliance factory in Columbia, Maryland. (Pls.' Mem. in Opp'n at 3).[1]

On March 15, 1992, Mr. Wells was injured by a severe electrical shock which he received while dismantling electric equipment in Building 1's paint room. Wells was badly burned while working to remove

---

1. The Court has already ruled that, under its contract with General Electric, Montel is obligated in this case to indemnify General Electric, if General Electric is liable to the plaintiffs.

severed conduit from a breaker box. (Pls.' Mem. in Opp'n at 13–14). The plaintiffs state that "[p]rior to the crew beginning work on the boxes, the boxes were inspected in an effort to determine whether they were live." (Pls.' Mem. in Opp'n at 14). Apparently, although the breaker box in question appeared to be deactivated, power was coming into it from another room, through a hole in the wall or door. (Lamm Dep. at 16–20).

Defendant General Electric has moved for summary judgment on a number of grounds, including the contributory negligence of Mr. Wells. If there is evidence of General Electric's negligence, the Court is of the opinion that there is a genuine issue of material fact as to whether the defense of contributory negligence would be available, so that summary judgment could not appropriately be granted on that defense. Fed.R.Civ.P. 56(c).

On the primary question, though, of General Electric's negligence, the Court must determine whether General Electric breached any duty that it owed to Wells. The heart of this summary judgment motion is General Electric's contention that it is not liable to plaintiffs for Wells' injury. In their complaint, plaintiffs assert that General Electric was negligent in failing to turn off the electricity in the paint room and to provide for auxiliary lighting sources; in failing completely to remove hazardous dust from the salvaged areas; and in falsely informing Montel employees, and/or plaintiff Wells that the breaker box in question had been deactivated, as well as "other negligence." (Wells Compl. ¶ 6).[2]

In their opposition to defendant's present motion, plaintiffs argue that General Electric owed a duty to Montel employees if it retained either (a) the ability to control or had (b) actual physical control over the place and manner of Montel's employees performance. Plaintiffs additionally argue that if General Electric assumed a duty to disconnect the panel boxes it was bound to fulfill that duty. Plaintiffs contend that

this duty "emanates" from Maryland precedent. (Pls.' Mem. in Opp'n at 24.). Finally, plaintiffs allege that, if General Electric had actual control over Montel's project, it owed a "non-delegable" duty to Montel employees to insure that the Building 1 premises were safe. (Id. at 24).

## I. Standard for Summary Judgment Motions

■ A grant of summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Miller v. Leathers*, 913 F.2d 1085 (4th Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). When examining a motion for summary judgment, the facts and all reasonable inferences must be viewed in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

This Court is of the opinion that there is no genuine dispute of material fact on the issue of General Electric's duty to Wells. *Celotex*, 477 U.S. at 317, 106 S.Ct. at 2549. Because neither party, however, has adequately described the framework for determining whether or not General Electric owed a duty of care to Montel employees during the salvage operations at Building 1, the Court will analyze each of the plaintiffs' claims under the appropriate rubric.

## II. Liability of an Employer of an Independent Contractor under Maryland Law

■■ It is axiomatic that there is no liability in negligence absent the breach of a duty. *See In re Sabin Oral Polio Vaccine Prods. Liability Litigation*, 774 F.Supp. 952, 954 (D.Md.1991). "The nature and extent of a tort duty recognized by law depends in part on the status of the party upon whom it is sought to be imposed and upon his relationship to the party claiming

---

**2.** Plaintiffs' negligent misrepresentation claim (Count II) asserts that General Electric "represented to plaintiff ... directly or indirectly through the plaintiff's fellow workers, that all electrical current had been cut off to the break-

er box in question when defendant knew ... that the electrical current ... was ... live." Count III is for loss of consortium due to injuries negligently caused by General Electric.

the benefit of it." *Parker v. Neighborhood Theatres,* 76 Md.App. 590, 595, 547 A.2d 1080, 1082, *cert. denied* 314 Md. 193, 550 A.2d 381 (1988). It is also axiomatic that the duty depends not only upon the status of the parties, but also upon the facts and circumstances of the particular case, *i.e.* that the actor has a duty to use reasonable care under all the circumstances. If no duty is owed another, then no action can be sustained even though injury has occurred. *Bauman v. Woodfield,* 244 Md. 207, 216, 223 A.2d 364, 368 (1966).

### A. Vicarious Liability of General Electric

■ The majority of jurisdictions, including Maryland, have held that, as a general rule, an employer's *vicarious* liability does not extend to employees of independent contractors, such as plaintiff Wells. *Rowley v. City of Baltimore,* 305 Md. 456, 467–71, 505 A.2d 494 (1986) and cases cited therein. Underlying this rule is the rationale that employers, such as General Electric, have no control over the actions of their independent contractors. *See Rowley v. City of Baltimore,* 60 Md.App. 680, 686, 484 A.2d 306, 309 (1984), *aff'd,* 305 Md. 456, 505 A.2d 494 (Md.1986). *See generally Restatement (Second) of Torts* § 409 (1965) (the employer of an independent contractor is not liable for physical harm caused to another by the negligence of the contractor or his employees).

The public policy basis for this general rule is the fact that state Worker's Compensation benefits generally cover a plaintiff/worker's injuries, and the injured employee of an independent contractor should not be put in a better position than had that plaintiff been an employee of the employer himself. *Brady v. Ralph M. Parsons Co.,* 327 Md. 275, 282–83, 609 A.2d 297, 300–01 (1992). Thus, were the plaintiffs here asserting any theory of vicarious liability against General Electric for Montel's negligence, Maryland law would not afford them a remedy.

### B. Liability Based upon General Electric's Own Negligence

Plaintiffs' complaint, however, clearly avers liability predicated upon General Electric's own negligence, and here the analysis is somewhat more complex. Both the caselaw and commentators recognize a number of common law exceptions to the general rule of non-liability for employers of independent contractors, which can be categorized into three broad areas:

(1) Negligence of the employer in selecting, instructing, or supervising the contractor.

(2) Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff.

(3) Work which is specially, peculiarly, or "inherently" dangerous.

*Rowley,* 305 Md. at 462, 505 A.2d at 497. The most common of these exceptions are found in §§ 410–429 of the Restatement (Second) of Torts. Most important to the present case are Restatement §§ 410–415, which address exceptions to the rule of non-liability in cases where an injured plaintiff claims actual fault on the part of the independent contractor's employer, here General Electric.[3] *See Rowley,* 305 Md. at 462, 505 A.2d at 497. Of these six sections, each of which provides an alterna-

---

**3.** The Introductory Note to Chapter 15 of the Restatement, Topic 1: Harm Caused by Fault of Employers of Independent Contractors provides, in pertinent part, as follows:

[T]he employer's liability must be based upon his own personal negligence in failing to exercise reasonable care in giving the orders or directions in pursuance of which the work is to be done (see § 410); to exercise reasonable care to employ only contractors competent to do the work with reasonable assurance of safety to others (see § 411); to exercise reasonable care in inspecting the work after it is done or, in certain cases, during its progress, in order to see that the work is so done as to secure the safety of others (see § 412); to exercise reasonable care to provide for the taking of such precautions, either by the contractor whom he employs or otherwise, as in advance are recognizable as necessary to enable the work to be safely done (see § 413); to exercise with reasonable care such control over the doing of the work as he retains to himself (see § 414); to exercise reasonable care in supervising the equipment and methods of persons doing work or carrying on activities upon his land (see §§ 414A and 415). If the employer fails to exercise care in any one of these particulars and thereby causes injury to others *to whom he owes a*

tive foundation for an employer's liability to others through its own negligence, the plaintiffs' theory of liability, Maryland case law, and the facts of this case all point to predicating liability on § 414. Therefore, this Court must initially determine if General Electric owed a duty to plaintiff Wells through the operation of § 414.[4]

### 1. *Restatement Section 414*

Section 414 of the Restatement (Second) of Torts provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care.

The comments to § 414 indicate that this section is to apply "where there is retention of control over the operative detail of the work." *Brady*, 327 Md. at 283, 609 A.2d at 301. Specifically, § 414 comment c sets forth the limitations to application of the section:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control *over the manner in which the work is done.* It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to *operative detail.* There must be such a retention of a right

of supervision that the contractor *is not entirely free to do his work in his own way.* (emphasis added).

To meet their burden under § 414's retention of control doctrine, the plaintiffs must show that General Electric "had the right to control the details of [Montel's] movements during [Montel's] performance of the business agreed upon." *Parker*, 76 Md.App. at 601, 547 A.2d at 1085, *quoting Cutlip v. Lucky Stores, Inc.*, 22 Md.App. 673, 325 A.2d 432 (1974). Further, the retention of control must "exist in respect to the very thing from which the injury arose." *Id., quoting Gallagher's Estate v. Battle*, 209 Md. 592, 122 A.2d 93, *cert. denied* 352 U.S. 894, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956).

Plaintiffs claim that it was General Electric's duty to control the electricity within the building and to inform Montel in which areas of Building 1 it could safely work. (Pls.' Mem. in Opp'n at 8.) Because General Electric retained specific rights of supervision such that Montel was not able to exercise control over the method and operative detail of its work, plaintiffs argue, General Electric owed Mr. Wells a duty of care under § 414 and its breach of that duty caused Wells' injury. This Court finds that there is no genuine dispute regarding the amount of control General Electric retained over Montel's electrical salvaging sufficient to make it liable to plaintiff Wells under § 414.

Montel was hired by General Electric to disassemble and salvage materials within Building 1 and to ready the factory for its new owner, the Rouse Corporation ("Rouse"). (Twigg Dep. at 108.)[5] The de-

---

*duty of care,* he is answerable because of his personal fault (emphasis added).

**4.** Due to the nature of the parties' arguments, the Court can be content to confine its ruling on this part of the motion to the application of § 414, as interpreted by Maryland case law, to the facts of this case. The Court expressly makes no finding as to whether any duty and derivative liability could be grounded upon the application of the present facts to Restatement §§ 410, 411, 412, 413, 415 or 416. The Court will note in passing, however, that it found practically no Maryland caselaw respecting these alternative Restatement sections.

Additionally, at least one circuit court has held that §§ 411, 413, and 416 are inapplicable to negligence actions asserted by an independent contractor's employee against the owner/employer, because these sections impose liability only with respect to third parties. *See Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1033 (5th Cir.1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978).

**5.** Notes from the September 26, 1990 Safety Meeting indicate that "[M]ontel has the contract to strip out the building, which includes the [electrical] conduit and bussing." After a panel and/or breaker box was disconnected, it was

gree of salvaging Montel conducted depended on the type of disconnect panel or breaker box in question. (*See* Trigg Dep. at 108–112.) As the defendant admits, Montel periodically solicited the assistance of its employees in disconnecting machinery and breaker boxes. (Def.'s Reply at 6.) The nature of the project called for cooperation between Montel and General Electric, especially in the area of electrical safety—an area where General Electric clearly had the benefit of more experienced personnel as well as greater knowledge of the worksite.

From the onset of the project, General Electric provided personnel with electrical expertise to assist Montel and Roy Bentley, Montel's on-site foreman, in disconnecting electricity necessary to complete its salvaging job. (*See* Myers Dep.—Cr. at 29, 32, Dr. at 61–62.) The record supplies at least some evidence that, for the first two months of the Building 1 project, General Electric disconnected "everything," "anytime [Montel] needed something to be turned off." (Myers Dep.—Cr. at 28.) The situation at Building 1 was fluid, however. In an attempt to address electrical issues arising during the dismantling process, Montel hired a former General Electric electrician, John Freeberger, to provide electrical support for Montel and to help coordinate the rest of the salvaging job. (Freeberger Dep. at 14.) [6]

By way of example in support of their argument that General Electric retained control over electricity, plaintiffs contend that Freeberger's main job was to double-check the electrical status of a particular area, "not necessarily to make the initial connections/disconnections." (Pls.' Mem. in Opp'n at 28.) Plaintiffs attempt so to shift all of the responsibility and control for electrical connection/disconnection to General Electric is clever, but unavailing. Until Mr. Freeberger began work (and even after his departure), Montel did not possess the necessary electrical expertise to address adequately all of its potential

electrical concerns. Montel did rely, to some degree, upon General Electric electricians in the completion of its project. Evidence in the record clearly indicates that, upon request, General Electric would help Montel by "double and triple-checking that the electric was turned off properly." (Myers Dep.—Dr. at 76.) The provision of such assistance, however, is manifestly different from General Electric's retention of *control* over the electricity within the areas in which Montel employees were working, and control is the deciding criterion.

Plaintiffs additionally contend that General Electric alone had the necessary keys to access the electrical vaults from which the power to specific electrical boxes could be disconnected and reactivated. (Pls.' Mem. in Opp'n at 7.) However, Mr. Bentley's statements indicate merely that he *thought* that General Electric had the only keys. (See Bentley Dep. at 138.) This statement, which is not competent in any event, *see* Fed.R.Evid. 602, is flatly contradicted by the testimony of Mr. Twigg, who indicates that Montel had copies of all the keys for the building. (Twigg Dep. at 101.)

Plaintiffs further argue that Montel understood its electrical responsibilities to be no more "than asking General Electric for assistance when needed." (Pls.' Mem. in Opp'n at 8.) It is true that, as the project continued, Montel relied upon General Electric electricians for assistance in determining what to do before salvaging electrical conduit, etc. (See Freeberger Dep. at 29); See also Myers Dep.—Cr. at 10 ("[Myers] understanding [was] that G.E. would make sure that all the substations were—that stuff was—the breakers were disconnected.... And they would assist us in disconnecting the other stuff, assist us in finding out what other areas had to be disconnected and assist us in disconnecting the other parts of the building.") Yet plaintiffs' argument misstates Montel's ultimate responsibility for the project.

Montel's job to "gut it." (Myers Dep.—Cr. at 36.)

**6.** It appears that Montel hired Mr. Freeberger because he was an electrician familiar with the

Building 1 facility and could help maintain the electrical integrity of the facility building to the buyer's satisfaction. It should be noted that Mr. Freeberger was no longer employed by Montel at the time Wells' injury occurred.

Montel was indeed subject to more electrical assistance and direction from General Electric than might be expected for a typical independent contractor. (See Myers Dep.—Cr. at 32) (Montel would have to get General Electric approval to go into rooms to remove); (See Bentley Dep. at 137) (Dave Bass [General Electric employee] provided assistance such as handling questions regarding some of the "conduit and stuff that—[we] wasn't sure about . . ., we would have them to take it loose for us.") This was not, however, a typical independent contracting job, but rather a unique dismantling procedure which demanded the cooperation of all concerned in order to be accomplished on schedule.

The key to analysis of plaintiffs' § 414 claim is that General Electric *assisted* Montel. It is true that Ray Dudek (subsequently replaced by Bill Green, who himself was succeeded by Dave Bass) and John Freeberger (both as a General Electric and as a Montel employee) provided primary electrical assistance to Montel's salvaging project. (See Bentley Dep. at 137, 140; September 26, 1990 Safety Meeting Minutes.) It is also true that after Freeberger left Montel's employ, he was not replaced.[7] However, the record indicates that any assistance by General Electric was provided *at the request of* Montel Metals. (See Myers Dep.—Cr. at 30) ("Roy coordinated whatever he wanted done with GE's people whatever needed to be done."); (Twigg Dep. at 118) (General Electric employees "worked under request to Montel when they wanted to disconnect something for them, or to check something.") This practical and pragmatic coordination of safety efforts did not give General Electric the necessary right of control over the details of Montel's salvage job which would predicate a § 414 duty owing to Mr. Wells. *Parker,* 76 Md.App. at 601, 547 A.2d at 1085.

Neither did General Electric retain control with respect to the "very thing from which the injury arose." *Id.* The fact that General Electric determined if a particular portion of Building 1 was ready to be gutted or that it checked whether the electricity was turned off in a particular area before Montel employees would begin working does not mean that Montel was not "entirely free to do its work its own way." Montel's project was to salvage Building 1. As to the operative detail of how and by whom this salvaging was to be accomplished, Montel and its employees had sole control. Despite plaintiffs' arguments, the record does not show a genuine dispute as to this material fact.

General Electric, therefore, cannot be said to owe a § 414 duty to plaintiff Wells. Without the existence of a duty, there can be no negligence by General Electric predicated upon § 414. Instead, this Court finds that any control and/or right of supervision retained by General Electric during the Building 1 project is general in nature and of a kind "usually reserved to employers." *Restatement (Second) of Torts* § 414 cmt. c (1965).

■ As an alternative ground for its holding, this Court questions whether, even if General Electric retained sufficient control over Montel's actions to bring § 414 into operation, employees such as Mr. Wells fall within the class of persons under Maryland law to whom a § 414 duty would run. As the Maryland Court of Appeals noted in *dicta:*

> In *Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986), we discussed at length the duties of a landowner who had employed an independent contractor to perform certain work on the premises. We there noted the various provisions of Chapter 15 of the Restatement (Second) of Torts, dealing with the liability of an employer of an independent contractor, and we reproduced comments by Dean Prosser suggesting the absence of intent by the drafters of the Restatement to expressly include employers[sic] of independent contractors within the protection of that chapter. *Id.* at 466–75, 505 A.2d 494. We specifically pointed out the anomaly of providing greater protection

> *(Id.)*

---

**7.** It appears only General Electric electricians remained on-site at the time of the accident.

to employees of an independent contractor than to the defendant's own employees and the effect of workers' compensation laws, and held that those provisions of the Restatement *were generally intended for the protection of persons other than the independent contractors and their employees.* *Brady,* 327 Md. at 282–83, 609 A.2d at 300–01; *See generally supra* note 5.

From the tenor of *Brady*'s *dicta,* it is the conclusion of this Court that, even were General Electric's retention of control over the dismantling of electrical wiring in Building 1 sufficient to invoke a duty on its part to use reasonable care, as per § 414, the Maryland courts would find that employees of an independent contractor are not within the class of persons to whom the duty in this section might run. *Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir. 1981). *See also Parker,* 76 Md.App. at 602, 547 A.2d at 1085 ("No matter how appellant phrases it, what he is unsuccessfully attempting is an end run on the Worker's Compensation Law.")

### 2. *Assumed Duty Exception— Contract or Conduct*

■ In the alternative, plaintiffs contend that General Electric specifically assumed a duty to disconnect the electricity to panel boxes within Building 1, and, once assumed, it was bound to fulfill that duty. Plaintiffs' argument is based upon the "assumed duty exception," which provides that "where a duty of due care has been assumed by contract or conduct, a worker not in privity is protected." *Brady v. Ralph M. Parsons Co.,* 82 Md.App. 519, 528, 572 A.2d 1115, 1120 (1990), *aff'd,* 327 Md. 275, 609 A.2d 297 (1992).[8] Citing to *Murphy v. Stuart M. Smith, Inc.,* 53 Md. App. 640, 643, 455 A.2d 69, 71 (1983), plaintiffs argue that a duty may be assumed specifically by contract; however, they cite this Court to no evidence within the record

that General Electric did so assume a duty to disconnect electricity to the panel boxes in the contract with Montel.[9] Indeed, the contract clearly speaks *contra* that assertion. Thus, there is no evidence sufficient to generate a triable issue on whether General Electric had a contractual duty of due care under its salvaging contract with Montel.

■ It appears, therefore, that plaintiffs' "assumed duty exception" argument is founded upon General Electric's conduct. Plaintiffs contend that General Electric employees informed Mr. Wells and his co-workers that the breaker boxes in Building 1's paint room (in which he was working when injured) were "dead" when, in fact, they were not. (Pls.' Mem. in Opp'n at 14–15.) The deposition assertion by plaintiff that someone who, *he believes,* was a General Electric employee told him that the only hot wire in the room was the buss running into the ceiling for the lights is insufficient to generate a triable issue. (M. Wells Dep. at 59–61, 212.) To be sufficient for such purposes under Fed.R.Civ.P. 56(e) and *Celotex,* 477 U.S. at 317, 106 S.Ct. at 2549, the evidence must be such as would be admissible at trial. *Wilson v. Clancy,* 747 F.Supp. 1154, 1157–59 (D.Md.1990), *aff'd,* 940 F.2d 654 (4th Cir.1991) (Table). In this case, the plaintiff's vagueness as to the identity and the position of the person who made the statement in question would preclude it coming in as an admission against General Electric under Fed.R.Evid. 801(d)(2). Further, even accepting the plaintiff's statement as true, he himself concedes that the alleged General Electric employee made *no* affirmative comments about or reference to the breaker boxes upon which Wells was working. (M. Wells Dep. at 107–08; 227–28.)

Additionally, Terry Dunn's testimony recounts that plaintiff Wells had a conversa-

---

**8.** It should be noted that Restatement (Second) of Torts § 410 might provide an alternative predicate for the liability plaintiffs are asserting here; however, no Maryland cases have adopted or analyzed this section's language within this factual rubric. Thus, under Maryland law, General Electric's liability cannot be grounded upon § 410. *See Wilson v. Ford Motor Co., supra.*

**9.** To the extent plaintiffs cite this court to precedent addressing an employer's voluntary assumption of a duty to comply with MOSHA or OSHA regulations in the interest of non-employees, *see Murphy v. Stuart M. Smith, Inc., supra* and *Brady v. Parson Co., supra,* these cases are simply inapposite.

tion with a General Electric employee, at least part of which Dunn heard, which referred to electricity. (Dunn Dep.—Dr. at 32–33, Redir. at 95.) However, Dunn's testimony regarding what Wells allegedly said he was told at some indeterminate time in the days before the accident by an unidentified General Electric employee, *id.* at 33, also would be prohibited under Fed.R.Evid. 801(d)(2). Further, Patrick Wells' deposition testimony indicates that an unidentified General Electric employee, "[a] short, older fellow with glasses ... said that it was—had been cut off." (P. Wells Dep. at 29.) Again, this testimony would not be admissible under Rule 801(d)(2), nor would the Court admit the evidence under the "catch-all" hearsay exception, Fed.R.Evid. 803(24), given the absence of sufficient "circumstantial guarantees of trustworthiness."

In contrast to these statements, the testimony of the above individuals clearly identifies Montel employees Roy Bentley and Larry Myers as having told their workers that the breaker box was dead. (See P. Wells Dep. at 29, 52; M. Wells Dep. at 212.) Thus, even viewing the cumulative effect of these three statements and the inferences therefrom in the light most favorable to the plaintiffs, *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2514, the testimony does not generate a genuine issue of material fact as to General Electric's conduct with regard to an assumed duty to disconnect the electricity in the breaker boxes in question.

Finally, notes of the May 15, 1991, "MOSH" conference are not, in this Court's opinion, admissible as substantive evidence of what General Electric management and its electrician(s) allegedly told Montel. This evidence was disavowed by both Terry Smith and Roy Bentley, on deposition, robbing it of the trustworthiness requisite as a predicate for admission under Fed.R.Evid. 803(8) and (24). (See Smith Dep.—Dir. at

24; Bentley Dep.—Cr. at 159–161.) *See also Ramrattan v. Burger King Corp.*, 656 F.Supp. 522, 530 (D.Md.1987). Plaintiffs have failed to show that there exists a genuine triable issue regarding any duty allegedly assumed by General Electric's conduct with respect to plaintiff Wells; thus, the assumed duty exception cannot be a basis for General Electric's liability to plaintiffs.

### 3. *Non-delegable Duty to Provide a Safe Workplace*

■ Finally, the plaintiffs contend that General Electric failed to maintain a safe workplace at Building 1, in breach of its duty. Citing this Court to *Le Vonas v. Acme Paper Board Co.*, 184 Md. 16, 40 A.2d 43 (1944), plaintiffs argue that General Electric had a non-delegable duty [10] to furnish employees of the independent contractor, such as plaintiff Wells, with a safe place of work. *See also Baltimore Gas & Electric v. Thompson*, 57 Md.App. 642, 652, 471 A.2d 768, 774 (Md.App.1984).[11] This duty arises from the fact that employees of an independent contractor are considered invitees onto the property of the employer. *Id.* at 652, 471 A.2d 768.

Affirming a directed verdict for the defendant, the *Le Vonas* court observed:

If the owner employs an independent contractor to do certain work, he owes to employees of the contractor the same duty he would owe to employees of his own to furnish them a safe place to work. When the risk to which an employee is exposed arises from causes which are concealed, the employer is bound to notify him of them, provided that he himself knows them, or by the exercise of ordinary care ought to have known of them.... [L]iability for injuries to a servant of an independent contractor rests upon the owner when the premises on which the stipulated work is done remain under his control and the

---

**10.** The *Rowley* court noted that the phrase "non-delegable" is something of a misnomer, because the owner/employer of an independent contractor is free to delegate this duty to another; the owner cannot, however, delegate away its responsibility for another's failure to carry out the duty. 305 Md. at 466, 505 A.2d at 499.

**11.** This duty, often referred to as the "safe workplace doctrine" when applied to a contractor's employees, is set forth in Restatement § 343 and is closely related to the duty of a landowner. *See Rowley*, 305 Md. at 465, 505 A.2d at 499.

injuries arise out of the abnormally dangerous condition on the premises, the owner being chargeable with knowledge of the danger.

184 Md. at 19–20, 40 A.2d at 45. *See also Leonard v. Sav–A–Stop Services*, 289 Md. 204, 218, 424 A.2d 336, 343 (1981).

Unlike the above analysis regarding Restatement § 414 and the "assumed duty" exception, General Electric was indeed subject to a limited duty to insure a safe workplace for Montel's employees. That duty, however, "... is relative and conditional, and what would be a full discharge of the duty under one set of circumstances may not be under another." *Bauman v. Woodfield*, 244 Md. at 217, 223 A.2d at 369. As a consequence, the extent of General Electric's duty, if any, is not to be seen simply as that of the ordinary owner of premises, but must be viewed in the context of the obviously hazardous process of salvaging and dismantling an industrial plant.

The record before this Court presents no disputed issue of material fact as to General Electric's fulfillment of its narrow duty to provide a safe workplace for Montel employees. General Electric's duty was to notify Montel employees of any latent or concealed dangers present in Building 1, provided it was aware, or in the exercise of ordinary care should have been aware, of the hazard. *Rowley*, 305 Md. at 465, 505 A.2d at 498. This Court is of the opinion that the danger of electrical injury to Montel employees while they were salvaging electrical conduit was neither latent nor concealed; therefore, it owed Montel employees no duty of notification.[12]

Further, under *Le Vonas*, any claim of liability for Wells' injuries predicated upon the "safe workplace" doctrine requires (1) General Electric's control over the premises and (2) the presence of an "abnormally dangerous condition." 184 Md. at 20, 40 A.2d at 45. Plaintiffs contend that General Electric had "substantial physical control of the work area and actual responsibility for the hazardous condition" under which plaintiff Wells worked. (Pls.' Mem. in Opp'n at 24). *See Rowley*, 305 Md. at 475, 505 A.2d at 503–04. The predicate control necessary to find General Electric liable under this theory is analogous to that required under § 414. *See* discussion *supra* at 1206. Here, however, the plaintiffs assert that defendants had *actual* physical control over the work area, not just the *right* to control. Because this Court found no genuine issue of material fact as to General Electric's retention of the *right* to control under § 414, it follows logically that the record does not support the more demanding standard for proving General Electric's *actual* physical control over the premises necessary for basing liability here.

Finally, in *Cutlip v. Lucky Stores, Inc.*, 22 Md.App. at 683, 325 A.2d at 438, the Maryland Court of Special Appeals cautioned against finding the very conditions of a contracting job itself "abnormally dangerous:"

> The "abnormally dangerous conditions on the premises" referred to in *Le Vonas* do not include conditions which arise after and as a result of the independent contract. The "conditions" are those latent dangers preexisting the contract's carrying over without the owner's taking precautions to guard against the conditions before he permits others to occupy the premises.

Obviously, the presence of live electrical current flowing through the breaker box which Wells dismantled was not the sort of latent and preexisting danger to which the *Le Vonas* court was referring. The very essence of Montel's contract was to strip out the electrical conduit and bussing within Building 1; thus, the condition of plain-

---

12. It should be noted, however, that the electrical drawings for Building 1 were not current, and electricity was being disconnected and reconnected on a daily basis through the course of the project. Montel and General Electric therefore agreed that "[e]very circuit must be considered hot prior to anyone working on any line." (September 26, 1990 Safety Meeting Minutes at

2.) To the extent that the inability visually to determine whether a particular electrical wire is "hot" could arguably be referred as a "concealed" risk, this Court finds as a matter of law that General Electric fulfilled its duty to notify Montel of the danger of working around electrical boxes.

tiff Wells working around electrical wiring—which led to his injury—arose both after and as a result of that contract and could not be considered an "abnormally dangerous condition" as defined by the *Le Vonas* court. Plaintiffs, therefore, have failed to present a triable issue as to General Electric's liability under the "safe workplace" doctrine. Due to the nature of the project, Montel, rather than General Electric, had the duty to assure that electric service had been disconnected to all electrical panels, boxes, and fixtures before Montel employees started working on them.[13]

### III. *Conclusion*

In summary, the Court, having considered all the facts and circumstances of the relationship between Montel and General Electric at the Building 1 site and the nature of the work being performed, is of the opinion that General Electric had no duty through its retention of control, by express or implied contract, by voluntary assumption, or otherwise to assure the safety of Montel personnel salvaging electrical fixtures. To the extent that General Electric, as owner of the premises, did owe a duty to Montel employees, it fully discharged that duty. General Electric is, therefore, entitled to summary judgment[14] and an Order so providing will be entered separately.

### ORDER AND JUDGMENT

For reasons stated in the foregoing Memorandum Opinion of even date entered herein, IT IS, by the Court, this 4th day of December, 1992, ORDERED and ADJUDGED:

1. That defendant General Electric Company's Motion for Summary Judgment BE, and it hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of General Electric and against the plaintiffs, with costs; and

3. That the Clerk of Court mail copies of the foregoing Memorandum Opinion and of this Order and Judgment to counsel for the parties.

---

**13.** As the *Rowley* court noted, "where ... the independent contractor has assumed responsibility for [action], and the harm has occurred to the ... employee as a result of a defect arising from the failure of the contractor to [act], liability is not imposed upon the person who hired the contractor." 305 Md. at 474, 505 A.2d at 503.

**14.** The loss of consortium claim in Count III is predicated upon a finding of negligence in Counts I and II; therefore, granting defendant's summary judgment motion disposes of this claim as well.